# THE STATE ex rel. CORNELIUS B. BAKER et al. v. DANIEL E. BIRD et al.

## In Banc, December 24, 1913.

1. **PROBATE COURTS: Jurisdiction: Equitable Matters and Proceedings.** No attempt has been made, in either the Constitution or statutes, to grant general chancery powers to probate courts, and it must be conceded that such courts possess only such powers as have been granted to them by the Constitution and statutes, together with such implied powers as are necessary to effectuate those expressly granted. Probate courts should be permitted to invoke equitable principles in adjudicating all issues which by the Constitution or statutes are expressly confided to their care; but they do not have jurisdiction to entertain a suit or proceeding whose sole basis is a demand for equitable relief, even though such relief would incidentally pertain to some matter of probate jurisdiction.

2. ————: ————: ————: **Guardians: Revoking Appointment.** A probate court has no authority to hear and determine an action in equity to revoke the appointment of a guardian of a minor, duly appointed, in order to give place to a more suitable person. Hence any petition lodged in the probate court having for its object the revocation of a guardian's appointment must be treated as an action at law.

State ex rel. v. Bird.

3. ———: ———: ———: Transfer by Appeal to Circuit Court: Change of Nature of Action. The nature of an action is not changed by its transfer by an appeal from one court to another. Hence, if the probate court had no authority to entertain a petition to revoke the appointment of a guardian of a minor on equitable grounds, the circuit court, though possessing chancery powers, cannot enter any judgment that the probate court was without power to enter.

4. GUARDIAN: Removal: For Religious Views. The statute prescribes that guardians of minors may be removed for like causes for which administrators of estates may be removed; and the statute concerning the removal of administrators does not contain any intimation that a guardian may be removed because his religious views are not the same as those of the minor's deceased parents. The words of the statute authorizing the removal of an administrator if he "become in any wise unsuitable to execute the trust reposed in him" apply to some impairment of suitability which may arise after his appointment. They do not authorize the removal of a guardian who was not a Roman Catholic at the time of his appointment, on the sole ground that the minor's deceased parents were Roman Catholics.

5. ———: ———: For Other Good Cause. Section 424, R. S. 1909, authorizing the court to require guardians to give supplemental security or new bonds "as is authorized by law in the case of administrators, and in default thereof or for other good cause to remove them," refers to some neglect or omission of duty by the guardian after his appointment, and it would be a strained construction to hold it authorizes the removal of a guardian on the ground that he was at the time of his appointment and is now of a different religious faith and persuasion from those of the ward's deceased parents.

6. ———: ———: ———: Religious Test Unconstitutional: Public Trust. But even if said section 424 authorized a removal of a guardian on the ground that his ward's parents were, and he is not, a Roman Catholic, it would be obnoxious to section 5 of article 2 of the Constitution which declares that "no person can, on account of his religious opinions, be rendered ineligible to any office of trust or profit under this State," for the position of a guardian charged with the care, maintenance and education of a minor is an "office of trust under this State," since guardians of minors receive their appointment through and under State laws, and hold their trust "under this State." It is impossible in view of this constitutional provision to apply a religious test in appointing a person to or removal from a position of trust or profit "under this State."

State ex rel. v. Bird.

7. ———: ———: Guardian of Same Religious Persuasion. Section 420, R. S. 1909, declaring that "a minor shall not be committed to the guardianship of a person of religious persuasion different from that of the parents, or of the surviving parent of the minor, if another suitable person can be procured," applies to the religious faith of parents who may be living when the appointment of the guardian is made, and not to the religious persuasion of parents who are dead. The custom prevailing in probate courts of appointing guardians of the same religious faith as that of the minors' deceased parents is a good one, but this statute does not authorize the removal of a guardian already appointed, on the sole ground that his religious faith is different from that of the minor's deceased parents.

8. ———: ———: ———: Shifting of Minors from Family to Family: Value of Affection for Children. The very strong affection which quickly springs up between a guardian who has received an orphan child into his home and the object of his protection and benevolence, is usually a safe and strong guaranty for the kind and considerate treatment for which the State is much concerned; and a child once legally placed in a home of affection and moral training should not be removed therefrom, nor its guardian replaced by another, except for the most cogent reasons. It is highly detrimental to the welfare of small children to shift them from family to family.

9. APPEAL: Supersedeas: Revocation of Appointment of Guardian. An appeal to the circuit court from an order of the probate court revoking the appointment of a guardian, and appointing another in his stead, suspends the order until the appeal is disposed of; and likewise an appeal from the judgment of the circuit court confirming said order, to the proper appellate court, acts as a *supersedeas* and suspends said judgment of removal.

10. ———: ———: ———: Enforcement: By What Court: Contempt. Where the probate court has made an order revoking the appointment of a guardian of a minor, and appointed another in his stead, and from that order the said removed guardian appeals to the circuit court and there it is confirmed, it becomes the duty of the probate court under the statute (Sec. 297, R. S. 1909) to enforce such order, and the circuit court has no authority to cite for contempt the removed guardian for failing to deliver the minor into the custody of the newly appointed guardian.

## Prohibition.

WRIT ALLOWED.

*E. Wright Taylor* for relators.

(1)   The cause on its merits and the appeal thereof are not now submitted, and argument to the merits is improper.   State ex rel. v. Henderson, 164 Mo. 360; Wand v. Ryan, 166 Mo. 648; State ex rel. v. Lewis, 76 Mo. 370; State ex rel. v. Dearing, 180 Mo. 62.   (2)   No jurisdiction is vested in the circuit court on appeal from the probate court to enforce its appellate decision and it is the duty of the circuit, after trying the matter *de novo,* to certify its findings to the probate, for execution there.   R. S. 1909, secs. 294, 296, 297; Branson v. Branson, 102 Mo. 613; State ex rel. v. Henderson, 164 Mo. 347; State ex rel. v. Guinotte, 156 Mo. 520; Woerner, Am. Law of Adm. (2 Ed.), sec. 547, p. 1202, sec. 549, p. 1208; Rice, Am. Probate Law & Practice, ch. 20, pp. 457, 458, 463.   (3)   The probate court has exclusive jurisdiction over guardians of minors.   Constitution, art. 6, sec. 34; R. S. 1909, sec. 4056; Johnson v. Beasley, 65 Mo. 250; Hoffman v. Hoffman, 126 Mo. 493; Brewer v. Cary, 148 Mo. App. 193.   (4)   The statute provides for an appeal and the appeal operates as a supersedeas.   R. S. 1909, secs. 463, 291, 292, 294, 2038, 2040, 2042; State ex rel. v. Allen, 92 Mo. 20; Cuendet v. Henderson, 166 Mo. 657; State ex rel. v. Field, 37 Mo. App. 83; State ex rel. v. Collier, 62 Mo. App. 38; King v. King, 73 Mo. App. 78; State ex rel. v. Lewis, 76 Mo. 370; State ex rel. v. Dillon, 98 Mo. 90; State ex rel. v. Hirzel, 137 Mo. 435; State ex rel. v. Klein, 137 Mo. 673; Ryans v. Boogher, 169 Mo. 685; Carroll v. Reid, 158 Mo. 319; Lewellyn v. Lewellyn, 87 Mo. App. 9; State ex rel. v. Wood, 142 Mo. 127; In re Van Loan, 142 Cal. 429; Walker v. Maddox, 97 Ga. 386; Woerner, Am. law of Adm. (2 Ed. 1899), secs. 543, 546, 547, 548, 550; Rice, Am. Probate Law & Practice, pp. 463-468; Church, New Probate Law & Practice (1909), p. 227; Powell, Law of Appellate Proceedings, p. 371; 2 Ency. Pl. & Pr. 327, and vol. 20, pp. 1240, 1241, 1229.

*Monroe & Roark* and *Hogsett & Boyle* for re-spondents.

(1)  The substance and meaning of section 420 are that the guardianship of a minor shall not be committed to a person of opposite religious persuasion from that of the parents or surviving parent of such minor, when a suitable person of like faith is available. This case falls squarely within the spirit and letter of that provision.  Voullaire v. Voullaire, 45 Mo. 602; In re Doyle, 16 Mo. App. 159; In re Kellar's Minors, 5 Ir. Ch. Rep. 328, 5 Am. L. Reg. (O. S.) 561; 15 Am. & Eng. Ency. Law, 50, note 4; Everesley's Domestic Relations, 658; Schouler's Domestic Relations, secs. 316, 341; Matter of Ann Turner, 19 N. J. Eq. 435; Woerner on Guardianship, p. 99; Underhill v. Dennis, 9 Paige, 202; In re DeMarcelin, 24 Hun, 207; In re McConnon, 112 N. Y. Supp. 590; In re Crickard, 102 N. Y. Supp. 440; In re Jacquet, 82 N. Y. Supp. 986; F. v. F., 1 Chan. Rep. (Eng.) 688.  It was contended below by counsel for relators that the statute in question applied only in instances where one or both parents are still living.  There is no basis for any such contention. Respondent claims that if the statute should be held to apply it is unconstitutional, for the reason that it is in conflict with section 5 of article 2 of the Constitution. It is apparent from this section of the Constitution that the office or trust referred to therein is an office or trust of public character, such as, for instance, the office of Governor.  It does not refer and obviously was not intended to refer to the appointment of a guardian, or administrator, or receiver, or any office of a similar character, all of which offices are not in the true sense public offices or trusts at all, but are in their nature private offices affecting only the relations of very few persons. 6 Words and Phrases, p. 4921.  This statute was not enacted to prevent but to preserve religious freedom, and to insure and pro-

tect religious freedom in its fullest sense.    (2)  Pending appeal from an order of removal of a guardian his right to the custody of the ward is suspended.  21 Cyc. 60; State v. McKown, 21 Vt. 503; Merrells v. Phelps, 34 Conn. 109; Gray v. Park, 155 Mass. 433; State v. Probate Judge, 17 La. 432; Successor of Menendez, 29 La. Ann. 408; Woerner on Guardianships, p. 116; State ex rel. v. Dearing, 180 Mo. 53.

BROWN, J.—Prohibition in this court to prevent further proceedings by respondent Daniel E. Bird, as judge of the circuit court of Jackson county, Missouri, under a citation to plaintiffs for contempt, in failing to deliver a minor into the custody of respondent George A. Dixon, pursuant to an order entered by said circuit court.

A brief history of the judicial proceedings which resulted in the citation for contempt is necessary to a full understanding of the issues in this case.

On July 22, 1911, one Charles Dixon, a resident of Jackson county, Missouri, the father and only surviving parent of Charles Dixon, Jr., departed this life, without having nominated any person as testamentary guardian of his said minor child.

On August 1, 1911, the probate court of Jackson county appointed the plaintiffs, Cornelius B. Baker and Susan M. Baker, his wife, as guardians of the person of the said minor (Charles Dixon, Jr.).  Susan M. Baker is the maternal aunt of said minor.  The said guardians received said minor into their custody and gave bond for the faithful performance of the trust cast upon them by the law.

On September 25, 1911, a petition was filed in the probate court of said Jackson county praying that the appointment of plaintiffs as guardians of the person of said minor (Charles Dixon, Jr.) be revoked, for the reason that said guardians were not of the same re-

ligious faith or persuasion as the father of said minor. Said petition is in words and figures as follows:

"Now comes Cosmos Dixon, of St. Joseph, Missouri, and Thomas Dixon, Ella Dixon and Louise Dixon, of Junction City, Kansas, and state that they are brothers and sisters respectively, of the late Charles Dixon, who, at the time of his death on July 22, 1911, was and for several years prior thereto, had been a resident and domiciled in Kansas City, Missouri, and that they are, and the deceased, Charles Dixon, at the time of his death and long prior thereto was of the Roman Catholic faith and persuasion, and that by virtue of these premises said petitioners are interested in the matters herein stated and prayed for.

"That Cornelius B. Baker and Susan M. Baker, husband and wife, were appointed by this court on the 1st day of August, 1911, guardians of the person of Charles Dixon, Junior, an infant eleven years of age, who is the only surviving child of the late Charles Dixon hereinbefore mentioned; that the mother of said infant, Charles Dixon, Junior, departed this life prior to the death of said Charles Dixon. That section 420 of the Revised Statutes of Missouri of 1909, provides that in such cases minors shall not be committed to the guardianship of a person of a religious persuasion different from that of the child's parent who last survived. That said Charles Dixon, Junior, was baptised and reared in the Roman Catholic faith and persuasion continuously up to the date of the death of the said Charles Dixon, the parent who last survived. That Charles Dixon, deceased, was of the Roman Catholic faith and persuasion. That neither the above mentioned Cornelius B. Baker nor Susan M. Baker is of the same religious faith and persuasion as that of the late Charles Dixon; that Cornelius B. Baker and Susan M. Baker were appointed without reference to or the attention of this court being called to the provisions of the statute hereinbefore mentioned; that the said peti-

tioners neither knew of nor consented to the above mentioned appointment; that George Dixon, who is a brother of said Charles Dixon, deceased, and now is and for many years last past has been a resident and citizen of Kansas City, Missouri, was raised in and during his life has continuously been of the Roman Catholic faith and persuasion, is a person suitable to be appointed guardian of the person of Charles Dixon, Junior, and is willing to accept the guardianship and act as the guardian of the person of said minor, Charles Dixon, Junior.

"Wherefore, your petitioners pray that the letters of guardianship of the person of said Charles Dixon, Junior, issued to the said Cornelius B. Baker and Susan M. Baker, be revoked, and that the order appointing the said Cornelius B. Baker and Susan M. Baker as guardians of the person of said minor be set aside, and that said George Dixon, or, if for any reason he be deemed unsuitable, some other person of the Roman Catholic faith and persuasion, be granted letters of guardianship of the person of said Charles Dixon, Junior, for the reasons above set forth. And that said letters were granted without reference to or compliance with said statute. And there is a suitable person of the same religious persuasion as the said Charles Dixon, deceased, who is willing to accept the appointment as guardian of the person of said Charles Dixon, Junior."

It is conceded by plaintiffs that all the allegations of fact in the foregoing petition are true, except the averment "that petitioners neither knew of nor consented to the appointment of the plaintiffs as guardians." It is admitted by respondents that John T. Dixon, one of the petitioners, and George Dixon, another brother of the minor's father, were present in the probate court when the plaintiffs were appointed guardians, and made no objection to said appointment.

The answer of the plaintiffs in the probate court to the petition of Cosmos Dixon et al. avers (1) that said petition does not state facts which gave the court jurisdiction to grant the relief prayed for; (2) that the plaintiffs are more suitable to act as guardians of the minor than any other person residing within the jurisdiction of the court; (3) that since plaintiffs were appointed guardians of the minor they have duly adopted him as their son and heir by regular deed of adoption, dated September 19, 1911, and (4) that if section 420, Revised Statutes 1909, should be so construed as to render them ineligible to act as guardians of said minor under their said appointment, said section as thus construed would conflict with section 5, article 2, Constitution of Missouri, and with article 6, Constitution of the United States, and with article 1 and article 14 of the Amendments to said Federal Constitution.

The reply of said petitioners in the probate court alleges that at the time the parents of said minor were married they mutually agreed in writing that such children as might be born to them should be reared in the Roman Catholic faith, and that George Dixon and his wife were at the time of the baptism of said minor chosen, respectively, its godfather and godmother.

Upon a hearing in the probate court on December 2, 1913, the prayer of the petition was granted, and the appointment of plaintiffs as such guardians was revoked, and George A. Dixon appointed in their stead, who thereupon accepted said appointment and gave bond as required by the probate court.

From the revocation of the appointment the plaintiffs prosecuted an appeal to the circuit court of Jackson county. Upon a hearing of said appeal the order of the probate court was affirmed and the plaintiffs were, by said circuit court, ordered to surrender the custody of said minor to the said George A. Dixon.

After a motion for a new trial, alleging that the circuit court should have sustained a demurrer to the evidence of petitioners, and a motion in arrest challenging the sufficiency of the petition, were filed and overruled, the plaintiffs prosecuted their appeal to this court.

On April 24, 1913, Cosmos Dixon et al., with George Dixon, applied to respondent Daniel E. Bird for a citation to plaintiffs to show cause why plaintiffs had failed to deliver the aforesaid minor into the custody of George Dixon. The citation was duly issued as prayed.

The petition for prohibition, after reciting the judicial proceedings before enumerated, challenges the right of Daniel E. Bird, one of the respondents, as judge of the circuit court, to cite or punish plaintiffs for contempt in failing to deliver the minor to Charles A. Dixon on the following grounds:

(1) That the petition of Cosmos Dixon et al., filed in the probate court, states no facts which, if true, would warrant the revocation of the appointment of plaintiffs as guardians of the minor by said probate court or by any other court upon appeal.

(2) That if the judgment of the circuit court were valid it is suspended through the prosecution by plaintiffs of their appeal to this court.

(3) That even if the judgment of the circuit court affirming the order of the probate court is valid and no appeal had been prosecuted therefrom, the respondent as such judge of the circuit court would possess no power to cite plaintiffs for contempt, for the reason that under section 297, Revised Statutes 1909, it was respondent's duty to certify to the probate court a transcript of his judgment and proceedings and leave the matter of enforcing the judgment or order of revocation to said probate court.

The answer or return of respondents asserts the validity of the order of the probate court revoking the

appointment of plaintiffs as guardians of Charles
Dixon, Jr., and appointing George Dixon in their stead,
the judgment of the circuit court affirming said order
of the probate court, and the citation for contempt is-
sued by respondent Bird.

Said answer further avers that the deed of adop-
tion was not executed by plaintiffs in good faith, but
only to strengthen their position in this litigation, and
that said deed has no binding force upon respondents.

Plaintiffs filed a motion in this court to strike out
certain parts of defendants' answer, but as the motion
was taken with the case and a determination of the ac-
tion on its merits will dispose of the issues of law
raised by said motion, it will not be separately con-
sidered.

## OPINION.

I.  The issues tendered require us to consider the
powers and duties of the probate court
under whose appointment plaintiffs seek
to retain the custody of the minor
Charles Dixon, Jr.

**Probate Court: Jurisdiction.**

By section 34, article 6, Constitution of Missouri,
probate courts are given specific jurisdiction over the
matter of *appointing* guardians of minors.   Our stat-
utes are also confirmatory of that jurisdiction, so that
the right of the probate court to make the appointment
cannot be questioned.

By sections 34 and 35, article 6, of our Constitu-
tion, it is further provided that the General Assembly
shall create probate courts with uniform *jurisdiction*
and duties; so that the Legislature was undoubtedly
authorized to vest in said courts such additional powers
not named in the Constitution as it deemed proper.
We find no attempt has been made, in either the Con-
stitution or statutes, to grant general chancery powers
to probate courts, and think it must be conceded that
such courts possess only the powers granted to them by
the Constitution and statutes, together with such im-

plied powers as are necessary to effectuate those expressly granted.

There have been numerous rulings by the appellate courts of Missouri to the effect that probate courts possess no equitable jurisdiction at all. [Carter v. Bolster, 122 Mo. App. 135; Ivie v. Ewing, 120 Mo. App. 124; Estate of Glover & Shepley, 127 Mo. 153; Jenkins v. Morrow, 131 Mo. App. 288; City of St. Louis v. Hollrah, 175 Mo. 79.] We find that the rule announced in some of the foregoing cases goes rather too far in stripping probate courts of all chancery powers, particularly is this true of the case of Estate of Glover & Shepley, 127 Mo. 153, l. c. 163-4.

Probate courts are specifically vested with jurisdiction to do certain things, and we think they should be permitted to invoke equitable principles in adjudicating all issues which by the Constitution or statute are expressly confided to their care. Such is the conclusion reached in the cases of Lietman's Executor v. Lietman, 149 Mo. 112; and In re Estate of Jarboe v. Jarboe, 227 Mo. 59. While the rule announced in the two cases last cited is undoubtedly sound law, I am not willing to concede that a probate court has jurisdiction to entertain a suit or proceeding, the sole basis of which is a demand for equitable relief, even though such relief should incidentally pertain to some matter of probate jurisdiction.

The Constitution and the statutes have particularized the several things which may be done by probate courts, and we think their jurisdiction is necessarily confined to such suits and proceedings as they have been granted power to adjudicate.

Learned counsel have not cited us to any constitutional or statutory provision which grants to probate courts the power to hear and determine actions in equity to revoke the appointment of guardians, and our own researches have convinced us that no such provision exists. Therefore the law to be applied in this case is

tersely and correctly announced in 21 Cyc. 53, as follows:

"It is a well-recognized rule that the probate court has no power to remove a guardian except in cases relating to the faithful performance of his trust, or to the sufficiency of the security given him. And where the statute enumerates the grounds on which guardians may be removed, a removal on grounds not enumerated is unauthorized."

The doctrine above announced is also sustained by the case of Kahn v. Israelson, 62 Tex. 221, 1. c. 226, wherein it is said:

"The removal of a guardian of a minor's estate, who has been duly appointed, in order to give place to a surviving parent, who has waived such right, is not provided for by the statute; and as the matter is regulated by statute, the courts have no power to engraft upon it a cause for removal not named in it."

There is *obiter* in the case of King v. King, 73 Mo. App. 1. c. 83, which tends to support the opposite view; and the majority opinion in the case of In re Ford, 157 Mo. App. 141, does sustain the views of respondents, but we cannot subscribe to the views expressed in the majority opinions in the two cases last cited.

It is well settled that the nature of an action does not change through its transfer by appeal from one court to another, consequently the circuit court, though a court possessing chancery powers, could not enter any judgment which the probate court was without power to render. [In re Estate of Strom, 213 Mo. 1; and Brown v. Glover, 158 Mo. App. 1. c. 400.] It follows that the proceeding instituted by Cosmos Dixon et al. must be treated as an action at law.

II. We shall now consider the petition of Cosmos Dixon et al., and ascertain if it contains any averment which constitutes a statutory or constitutional ground for revoking the appointment of plaintiffs.

Petition: Sufficiency of.

Section 462, Revised Statutes 1909, prescribes that guardians may be removed for like causes as administrators of estates.

Section 50, Revised Statutes 1909, enumerates the causes for which letters of administration may be revoked, and reads as follows:

"If any executor or administrator become of unsound mind, or be convicted of any felony or other infamous crime, or has absented himself from the State for the space of four months, or *become* an habitual drunkard, *or in anywise incapable or unsuitable to execute the trust* reposed in him, or fail to discharge his official duties, or waste or mismanage the estate, or act so as to endanger any coexecutor or coadministrator, or fails to answer any citation and attachment to make settlement, the court, upon complaint in writing made by any person interested, supported by affidavit and ten days' notice given to such executor or administrator, as prescribed in section 280 of this chapter, shall hear the complaint, and, if it finds it just, shall revoke the letters granted."

It is needless to say that nowhere in the quoted section is found any intimation that a guardian may be removed because his religious views are not the same as those of the parents of his ward.

Respondents' learned counsel contend that the words "become . . . unsuitable to execute his trust" should be construed so as to disqualify plaintiffs from acting as guardians of a ward whose parents were of a different religious faith from plaintiffs. We find this insistence is wholly untenable. The quoted words clearly apply to some disability or incapacity which may arise after the appointment. In the case in judgment it is not averred that the religious views, or the moral or financial condition of plaintiffs, have, in any respect, changed since their appointment.

III.   The only other statute which deals with the powers of probate courts to remove guardians is section 424, Revised Statutes 1909.  This section, after prescribing that guardians must be twenty-one years of age and give bond for the faithful performance of their duties, provides that such guardians may also be required to give supplemental security or new bonds ''as is authorized by law in the case of administrators, and in default thereof *or for other good cause* to remove them.''

<div style="margin-left:2em;">**Religious Test to Hold Trust.**</div>

It would certainly require a very strained construction of the last quoted statute to authorize a removal for the cause charged in the petition of Cosmos Dixon et al.  We think the legislative intent, as expressed in this section, pertains to some negligence of duty or omission of which the guardian has been guilty subsequent to his appointment.  But should section 424, supra, be construed so as to authorize the probate court to remove a guardian because of his religious views, that construction would undoubtedly render said section obnoxious to section 5, article 2, Constitution of Missouri, which, among other things, declares that ''no person can, on account of his religious opinions, be rendered ineligible to *any office of trust or profit under this State.*''  Respondents insist that the guardian of a minor is neither an officer, nor in a position of trust within the purview of our Constitution, but in this contention they are in error.  That a person charged with the care, maintenance and education of a minor possesses a very important trust cannot be logically gainsaid.  In fact, section 462, Revised Statutes 1909, providing for the removal of guardians, specifically designates the position as a trust and as an office.

The Constitution does not say, nor mean, that the trust must be a public one—it is only necessary that it be a trust *under this State.*

The only case directly in point, to which our attention has been called, is Maxey v. Bell, 41 Ga. 183, in which case, under a Constitution prescribing that no one shall be "prohibited from holding any public office or trust on account of his religious opinions," it was directly held that the office of guardian is a public trust, and that no man can be incapacitated for that trust by reason of his opinions.

Guardians of minors receive their appointment through and under State laws, and as their powers and duties are prescribed by our statutes it necessarily follows that they hold their trust *under this State*. It is possible to apply a religious test in electing or appointing a person to a position of trust or profit, and such test could also be applied in a proceeding to remove him, but no such test, under our Constitution, can be legally applied at any time.

Relation of the State to Religious Sects.

IV. Respondents seem to base their main hope of success in this case upon section 420, Revised Statutes 1909, which reads as follows:

"A minor shall not be committed to the guardianship of a person of religious persuasion different from that of the parents, or of the *surviving* parent of the minor, if another suitable person can be procured, unless the minor, being of proper age, should so choose."

Their insistence is that Charles Dixon, Sr., being a Roman Catholic, and his death occurring subsequent to that of his wife, it became the absolute duty of the probate court to revoke the appointment of plaintiffs and appoint some other person of the Catholic faith in their stead, if any suitable Catholic could be found.

Said section 420, supra, is just a little vague, but we think it clearly applies to the religious faith of parents who may be living when the appointment of a guardian is made, and not to the religious faith or persuasion of parents who are dead.

The words "or surviving parent" unmistakably refer to a living person, and not to one who has passed away. The word "surviving" means: "remaining alive, existing." [Webster.] This statute was probably enacted out of deference to the feelings of parents who may be-placed in such unfortunate circumstances that they are forced to part with the custody of their children.

It is difficult to see how the State could be interested in perpetuating the same religious views from one generation to another.

The State looks with benevolent eyes upon all forms of religious worship, as witness the fact that it exempts church property from taxation, but the State cannot directly lend its aid toward perpetuating any form of religion, or throw any impediment in the pathway of any system of religious worship, without violating at least the spirit of our organic law.

That the State is deeply interested in the education of all its youths, is evidenced by the fact that it exempts from taxation all schools, whether secular or sectarian, and expends millions of dollars annually in free secular education. It is also interested in having all of its children reared in a good moral atmosphere, to the end that they may not become criminals or paupers, and has enacted may statutes expressive of that desire; but the State has not undertaken and cannot, under our present Constitution, undertake to decide what form of religious instruction is best for any person.

Courts, when so directed, will undertake to decide what kind of conduct is consonant with good morals, but they should never attempt the more delicate and difficult task of determining what form of religious teaching is most likely to promote good morals or good citizenship. In fact, they could not do so without invading the domain of private conscience, and undermine, if not destroy, the inestimable blessings of religious liberty.

To give section 420, supra, the construction which respondents contend for would be to render it obnoxious to the Constitution. Said section is clearly directory, and more precisely speaking we think it is only advisory.

We are aware of the custom prevailing in our probate courts of appointing guardians for minors of the same religious faith as their deceased parents. We think it a good custom and worthy of continuance. When some one of the same religious faith as the parents of a minor (whether those parents be living or dead) offers his services as guardian, and such person is as suitable from the standpoint of good morals and ability to administer the sacred trust of guardian as any other person willing to take the same responsibility, the appointment of the person having the same religious faith as the ward's parents is in nowise objectionable; but the moral, social and financial welfare of the minor are paramount to its religious instruction.

There is no statute authorizing the revocation of the appointment of plaintiffs as attempted by the probate court of Jackson county, and there is a very potent reason why there ought not to be any such law or any such custom. It is highly detrimental to the welfare of small children to shift them around from one family to another.

V. When a helpless infant is confined to the care of any person possessing the ordinary instincts of civilization, a very strong affection quickly springs up between the protector and the subject of his or her benevolence. This affection is usually a better and safer guaranty for kind and considerate treatment of the child than any bond or written law which the hand of man can formulate. When a child is legally placed in a home where it receives good treatment and moral training, it should never be removed from that home, except for the most cogent reasons.

Relation of Guardian to Minor.

The State is very solicitous that its youths, who from any cause or mischance have been deprived of the beneficient influence of parental care, shall acquire good homes and the best possible opportunities to equip themselves for the grave responsibilities of good citizenship. By its charters and exemptions from the burdens or taxation the State has encouraged charitable persons to enter upon the regular business of providing temporary homes for orphans and neglected children, and placing those children under the guardianship of respectable people as fast as suitable opportunities can be found for so placing them. Such children, when accorded the benefits of comfortable and uplifting surroundings, often become very useful citizens. If the writer is correctly informed the present Governor of one of our great commonwealths and the mayor of one of our leading cities were once nameless waifs, but were reared and started on the road to usefulness and fame by persons not bound to them by any tie of consanguinity.

If it were lawful to revoke the appointment of guardians who have taken minors into their homes upon a simple showing that the religious views of the guardian are different from the religious opinions entertained by the parents of the minor, this would, in my judgment, most seriously interfere with the matter of providing homes for orphans. Few people would assume the responsibility of undertaking to rear such children under a rule of law such as the respondents contend for in this case.

Respondents' resourceful counsel have cited many authorities (mostly the rulings of chancery courts) tending to support the contention that plaintiffs, on account of their religious views, are ineligible to act as guardians of Charles Dixon, Jr. In the case of In re McConnon, 112 N. Y. Supp. 590, and In re Jacquet, 82 N. Y. Supp. 986, it is expressly held that courts exercising probate jurisdiction can and ought to revoke the

appointment of guardians upon a showing that the parents of their wards were of a different religious faith from that of the guardians. Those rulings are not applicable here, because based upon a constitution and statutes entirely different from ours.

That provision of the New York Constitution regarding the subject of religious liberty reads as follows:

"The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this State to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this State." [Art. I, sec. 3, Birdseye's Cumming & Gilbert's Consolidated Laws of New York (1909), p. 38.]

I see nothing in this New York Constitution which would prevent the General Assembly of that State from applying a religious test in the appointment of guardians; nor does there seem to be anything to prevent the courts of that State from doing likewise, when they possess the temerity to do so. I do not approve the rule in the cases above cited.

If this country had adopted a State religion and ordained that all orphans should be instructed in the principles of such religion, then the contention of respondents would be sound, but, under the Constitution and laws of Missouri, we cannot sustain the action of the probate court in revoking the appointment of plaintiffs.

VI. Plaintiffs insist that respondents ought to be prohibited from proceeding further against them under the citation for contempt, because the appeal to this court *supersedes* and suspends the judgment of the circuit court.

**Appeal Supersedeas.**

Section 463, Revised Statutes 1909, found in the article of the statutes relating to guardians and curators of minors, is as follows:

"Appeals shall be allowed from any final order or judgment of the probate court under this article, at any time during the term, or within six months thereafter, in like manner and with the same effect as appeals are allowed in cases of administration of the estates of deceased persons."

The order of the probate court removing plaintiffs as guardians was just as final as to them as any order or judgment the probate court could render. If not reversed on appeal it terminated entirely their relations to the minor as his legal custodian. [State ex rel, Spickerman v. Allen, 92 Mo. 20; Cuendet v. Henderson, 166 Mo. 657.]

It will be observed that the last quoted section recites that the appeal therein provided for shall have "like effect" as in the case of administrators. This can mean nothing else than that the appeal from an order of the probate court revoking a guardianship shall operate in the same manner and with like effect as an appeal from an order revoking letters of administration.

Section 289, Revised Statutes 1909, prescribes that an appeal may be granted from an order revoking letters of administration; and section 294, Revised Statutes 1909, provides that such an appeal shall only act as a *supersedeas* in the very matter from which the appeal is taken. These statutes when read together, as the General Assembly intended they should be, by making section 463 a part of sections 289 and 294, supra, mean that an appeal by a guardian from an order revoking his appointment suspends the order until the appeal is disposed of.

Upon appeal from the circuit court to this court the appeal operates as a *supersedeas* under the very words of the statute. [Secs. 2038 and 2042, R. S. 1909.]

Respondents strenuously insist that the appeal of the plaintiffs does not operate as a *supersedeas,* citing: State v. McKown, 21 Vt. 503; Merrells v. Phelps, 34 Conn. 109; Gray v. Parke, 155 Mass. 433; State v. Judge of the New Orleans Probate Court, 17 La. 432; and Succession of Menendez, 29 La. 408. Decisions regarding the appellate practice of other States are no criterion for us. Laws relating to appeals are creatures of the statute, pure and simple. [Owens v. Mathews, 226 Mo. 77; Western Tie & Timber Co. v. Naylor Drainage Dist. Co., 226 Mo. 420, 1. c. 441.] When, as in this case, our General Assembly has spoken we need look no further. Unambiguous statutes furnish their own reasons for their existence. [Gist v. Rackliffe-Gibson Construction Co., 224 Mo. 369, 1. c. 388.] Respondents earnestly insist that cases may arise where a guardian is shamefully abusing his ward, or subjecting such ward to the most immoral influences, and yet if an appeal acts as a *supersedeas* the guardian can continue any sort of evil treatment to which he may see fit to subject his ward, by merely taking an appeal.

There is no charge of any kind of abuse of the ward by plaintiffs, and it is usually safe for courts, like individuals, to cross bridges when they are reached in the ordinary course of travel. We decline to announce what our views would be in a hypothetical or imaginary case, but will, in a general way, refer respondents to article 2, section 10, of the Constitution of Missouri. In a recent case we sustained the action of a trial court (possessing chancery powers) in appointing a receiver for property, notwithstanding the fact that the preservation of said property was, at that time, partially, though not fully, protected by an appeal bond. A court with an arm long enough to reach out and conserve property, can doubtless also conserve good morals and human life whenever the same are in peril.

VII. Another proposition which we are called upon to consider is the contention of plaintiffs that if they are guilty of contempt of any court, it is the probate court and not the circuit court of Jackson county. Section 297, Revised Statutes 1909, reads as follows:

**Judgment: How Enforced.**

"The clerk of the circuit court or other court shall certify a transcript of the record and proceedings and the original papers to the court whence the appeal was taken, who shall proceed according to the decision of the circuit court."

From the very words of the foregoing statute it is apparent that the circuit court should not have attempted to execute such a judgment as respondent Bird entered in the proceeding to revoke plaintiffs' guardianship.

The act of certifying a transcript of a judgment of the circuit court to the probate court in a case like this is intended as an official notice to the latter court of the result of the appeal in the circuit court, the same as a mandate of this court is a notice to the trial court of the disposition of an appeal to this court; and when an order of the nature now in judgment is affirmed by the circuit court, it becomes the duty of the probate court, and not of the circuit court, to enforce such order.

Plaintiffs also insist that the citation of respondent Bird is invalid on the further ground that plaintiffs' deed of adoption entitles them to retain the custody of the minor.

Having found that the attempted revocation of the appointment of plaintiffs as guardians of Charles Dixon, Jr., is illegal and void, we decline to determine the legal effect, if any, of the deed of adoption.

Pursuant to the views expressed in this opinion, it is ordered that the temporary rule in prohibition heretofore granted by this court be made permanent. *Lamm, C. J., Woodson, Walker* and *Faris, JJ.,* concur: *Graves, J.,* concurs in result; *Bond, J.,* dissents.