## STATE ex rel. EVANGELICAL LUTHERAN KINDER-FREUND SOCIETY OF MINNESOTA v. CHARLES E. WHITE.[1]

December 5, 1913.

Nos. 18,522—(306).

**Habeas corpus — custody of dependent child.**

1. Where a child adjudged by the juvenile court to be dependent within Laws 1905, c. 285, and committed to the care of an eleemosynary association, leaves the home of persons to whom its custody is given by the association for sufficient cause, and finds a home with other persons, the prime consideration on habeas corpus by the association to recover custody, is the child's welfare and not the legal right to custody.

**Administration of Juvenile Court Act.**

2. A determination in favor of respondent in such a case will not necessarily interfere with the general plan or administration of the Juvenile

1 Reported in 144 N. W. 157.

Court Act, even though the legislative preference, indicated by section 13 thereof, as to the religious beliefs of those to whom the custody of children within its terms may be awarded, be thereby disregarded, especially in absence of radical differences of religious faith; the considerations involved in such section, however, being grave and weighty, and constituting an important element in the final determination.

**Right of visitation upon part of relator.**

3. The welfare of the child involved in this case *held* to require her to be left in respondent's custody, subject to the right of visitation on the part of relator, an eleemosynary association to which her custody had been previously awarded by the juvenile court.

Upon the relation of the Evangelical Lutheran Kinderfreund Society of Minnesota, the district court for Wright county issued its writ of heabeas corpus directed to Charles E. White. The matter was heard by Giddings, J., who made findings and ordered judgment discharging the writ and awarding the custody of the child in question to respondent. From that order relator appealed and the appeal was tried de novo. Affirmed.

*Otto Kueffner,* for appellant.

*H. S. Whipple* and *Woolley & Johnson,* for respondent.

PHILIP E. BROWN, J.

Appeal by relator from an order of the district court, in habeas corpus proceedings, awarding custody of a female child 11 years old to respondent. The cause was tried here de novo, pursuant to G. S. 1913, § 8312, on the record made below.

It appeared that prior to January 4, 1911, the child's mother died, and on that date, after hearing duly had, the juvenile department of the district court of Hennepin county adjudged her dependent under Laws 1905, p. 418, c. 285,[1] and under section 7 thereof committed her to the care of relator, an eleemosynary corporation of St. Paul, organized under the laws of this state for the purpose of securing homes for orphan and other children, there to remain until she attained majority, unless sooner discharged by due course of law. Relator forthwith took her into its care, custody, and guardianship, and has since been prepared to furnish her a home. On

[1] [See G. S. 1913, §§ 7162-7175]

the same date relator committed the care, custody and control of the child to a husband and wife, and she remained in their home until April 11, 1913, under the general supervision of relator. While there, however, but without relator's knowledge, she was so cruelly and inhumanly treated by one of her immediate custodians, as to justify her in leaving, which she did. Respondent, learning the circumstances, received her into his home on the same date, where she has since resided and desires to remain. On April 18, 1913, the probate court of the county where respondent resided, appointed him guardian of her person and estate, and he qualified as such. Respondent and his wife, while not of the same religious denomination as the child's parents, are, as they were, of the Christian faith, and further are estimable people, financially well off, have an ample and comfortable home, and are otherwise circumstanced and fitted to furnish the child material comforts and proper home surroundings. Reciprocal attachment exists between them and her, she in effect being treated as one of their own children, and they desire that she continue in such relation until her majority. They offer to provide her all necessaries, to educate her in our graded and higher schools, to supply special training if she develops talent, and to surround her with fostering care and parental attention, and plan to equip her as a teacher or along other useful lines, and, when she leaves their control, to furnish her with a substantial sum of money. On the other hand, relator proposes to take her to a comfortable and adequate temporary home, which it maintains in St. Paul, where she will be cared for properly until a home is found for her with people entertaining her parent's religious beliefs, which, it appears, can speedily be done.

1. Relator contends that the decree of the juvenile court entitles it, as a matter of law, to an order in this proceeding awarding the child's custody to it. The argument proceeds along these lines: Under the Juvenile Court Act, the district court had exclusive jurisdiction in the matter of the custody and control of this child, and its determination cannot be interfered with, modified, or questioned by another court or in another proceeding, so long as its decree remains unimpeached; and if the child's interests require change of

custody, the juvenile department of the district court is the only tribunal to which application should be made. It is also claimed that any change of custody ordered in this proceeding would be contrary to the theory upon which the juvenile court proceeds and interferes with relator's rights, duties, and purposes; furthermore, that it would nullify section 13 [1] of the Juvenile Court Act, which provides that the court, in committing children to the custody of either private persons or associations, shall, so far as it deems practicable, place them with such as entertain, or are controlled by persons entertaining, religious beliefs like those of the parents.

These contentions cannot be sustained. We are not here considering the case of a delinquent child, nor an application to discharge one from a state institution. The purpose of the act, so far as concerns this child, was merely to provide her a proper home, and this the state proceeds to work out under its general power and jurisdiction over children. True it is that the act authorizes the court to commit children to associations similar to relator, and in such case they become their wards, subject to their guardianship, and they are vested with power to place them in family homes, with or without indenture, and may also assent to adoptions; and likewise, by other statutory provisions, the board of control has supervision of these associations. But the state, by this legislation, made the association merely one of its agencies to assist in carrying out its policy with respect to dependent children and in finding homes for them, and, notwithstanding relator's temporary custody of the child here concerned, retained general control over her. Relator, being the creature of the state, the latter has the right of visitation, exercisable through the instrumentality of its courts; and habeas corpus is a proper remedy to determine rights to custody, whether the association be relator or respondent therein, when new facts materially affecting the child's interests have occurred subsequently to prior adjudication concerning its custody. Ordinarily the object of this writ is to inquire whether one is legally restrained of his liberty; but in cases like the present, the personal freedom of the infant is not involved, infants, from humane reasons, being presumed to be in custody of some one until their majority. In such cases,

[1] [See G. S. 1913, § 7174]

moreover, the writ is used, not merely to determine legal rights of custody as between applicants therefor, but to accomplish the best interests of the infant, and courts of law and equity have long possessed this jurisdiction. In the matter of Barry, 136 U. S. 597; New York Foundling Hospital v. Gatti, 203 U. S. 429, 27 Sup. Ct. 53, 51 L. ed. 254. See also State v. Bechdel, 37 Minn. 360, 34 N. W. 334, 5 Am. St. 854.

In the second case cited, a corporate foundling hospital of New York state, empowered to receive and keep children under its charge, custody, and management, in the exercise of its powers sent a number of its wards to Arizona, where they were placed in charge of alleged improper persons, subject, however, to the supervision of officers and agents of the corporation. One of the children was forcibly taken from the custodian. The corporation attempted to regain custody by habeas corpus in the local courts. Its right being denied in the Territory (79 Pac. 231, 7 L.R.A.(N.S.) 306), it appealed to the United States Supreme Court. The latter, after quoting the principle that, in habeas corpus proceedings instituted for such purpose, "infants ought to be left where found, or be taken from that custody and transferred to some other, at the discretion of the perogative guardian (the state), and according to its opinion of their best interests and safety," continues [p. 439:]

"It was in the exercise of this jurisdiction as *parens patriæ* that the present case was heard and determined. It is the settled doctrine that in such cases the court exercises a discretion in the interest of the child to determine what care and custody are best for it in view of its age and requirements. Such cases are not decided on the legal right of the petitioner to be relieved from unlawful imprisonment or detention, as in the case of an adult, but upon the court's view of the best interests of those whose welfare requires that they be in custody of one person or another. In such cases the question of personal freedom is not involved except in the sense of a determination as to which custodian shall have charge of one not entitled to be freed from restraint."

So also, in Green v. Campbell, 35 W. Va. 698, 702, 14 S. E. 212, 214, 29 Am. St. 843, it is said:

"But it is not to be forgotten or overlooked that such use of this writ is of an equitable nature, and therefore the welfare of the infant is the polar star by which the court is to be guided in the exercise of its discretion; and the court, when asked to restore, is not bound by any mere legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just."

In line with these principles, this court, in State v. Flint, 63 Minn. 187, 65 N. W. 272, awarded a child to its mother instead of father, though the latter had the statutory right to custody. See also State v. Greenwood, 84 Minn. 203, 87 N. W. 489; Gauthier v. Walter, 110 Minn. 103, 124 N. W. 634; Townsend v. Kendall, 4 Minn. 315 (412); In Matter of Welch, 74 N. Y. 299; Hurd, Habeas Corpus, 461; 77 Am. Dec. 534; Church, Writ of Habeas Corpus, § 440a et seq; 15 Am. & Eng. Enc. (2nd ed.) 187; 21 Cyc. 330.

The legislature, by the act referred to, cannot be held either to have abrogated or limited the function of the writ, even if the power so to do be conceded, nor to confine jurisdiction to the juvenile courts.

2. We are unable to find any good reason for concluding that a determination in favor of respondent would interfere with the general plan or administration of the Juvenile Court Act. It is evident from what has been said that, so far as concerns this case, the purpose of the act was accomplished if the child found a suitable home. The considerations involved in the provisions of section 13, supra, are grave and weighty, and, while not mandatory, indicate the legislative preference, and hence must, in deference thereto, be considered in all cases as an important element entering into a final determination. Fortunately no such radical differences in religious belief exist here sufficient to make this a perplexing question.

3. Taking the welfare of the infant as our guide, as we must, we have no doubt it will best be subserved by leaving her with respondent. If relator should use its utmost effort to find a home for her, it is doubtful whether it would meet with success in greater measure to her interests than is afforded by the present situation; and we are not disposed to subject her to the uncertainties necessarily incident

to such endeavor. The conclusions reached are in no wise based upon the effect of respondent's appointment as guardian by the probate court.

The disposition we make of this child is not necessarily final. Respondent and his family should not, moreover, attempt to influence the religious training of the child contrary to the doctrines of the church of her parents, but should afford her opportunity to embrace them so far as such may be done consistently with her attendance in our public schools.

Ordered that the order appealed from be affirmed, and respondent retain the case, custody, and control of the child, and of her education and training, subject to the right of visitation on the part of relator, its officers, and ministers, until further order.