# Butcher's Estate.

*Guardian and ward—Appointment of guardian—Persons of same religious persuasion—"Shall be preferred"—Parental grandfather —Maternal uncle—Discretion of court—Welfare of child—Act of June 7, 1917, P. L. 447.*

1. The mere fact that a father, being a Protestant, had promised the mother, a Catholic, previous to marriage, that children of the marriage should be brought up in the Catholic faith, which promise he afterwards confirmed in a letter to the children, does not in itself compel the court to appoint as guardian of the children a person of the Catholic faith, under sec. 59 (B) of the Fiduciaries Act of June 7, 1917, P. L. 447, which provides that "persons of the same religious persuasion as the parents of the minors shall in all cases be preferred by the court in their appointment as guardians of the persons of such minors."

2. In such a case the court, in the exercise of a sound discretion, taking into account all the circumstances of the case, and the welfare of the minors, may, after the death of both parents, appoint as guardian a paternal grandfather, a Protestant, rather than a maternal uncle, a Catholic, where it appears that the grandfather is of excellent character and high standing, possessed of considerable property, fond of the children, and has stated to the court that he had no desire in any way to interfere with the religious training of the children, would permit their attendance at a Catholic church, and would bring them up as Catholics until they were old enough to choose for themselves in such matters.

3. The provision of the Act of June 7, 1917, P. L. 447, which requires that persons of the same religious persuasion "shall be preferred" by the court, is not to be construed as a positive command to appoint such person, regardless of considerations relating to fitness, or as taking from the court its discretion, nor in any way to relieve it of its duty to choose such person as, in its opinion, shall be best fitted to look after both the physical and spiritual welfare of the minor. The act requires that, as between two persons of equal standing and ability in other respects, the court is to appoint the one of the same religious faith as the parents, and only

to this extent is the provision of the act intended to be mandatory. Otherwise the words "shall be appointed" would doubtless have been used instead of "shall be preferred."

4. Even if it should be assumed that the agreement and express desire of the father were the equivalent of a religious "persuasion" within the meaning of the act, the court was not bound to appoint, as guardian, a person of the same religious persuasion, but had the right, in the exercise of a sound discretion, to appoint a person, who, in its opinion, was best fitted to care for the minors.

Argued February 2, 1920. Appeal, No. 4, Jan. T., 1920, by Charlotte Antelo, next friend of Henry Devereux Butcher et al., from decree of O. C. Montgomery Co., Nov. T., 1918, No. 42, appointing guardian in estate of Henry Devereux Butcher, Constance Antelo Butcher and Henry Clay Butcher, 3d, minors. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Petition for appointment of guardian of three children under the ages of fourteen years. Before SOLLY, P. J.

The case turned on whether a paternal grandfather, a Protestant, or a maternal uncle, a Catholic, should be appointed guardian.

The facts are stated in the opinion of the Supreme Court.

The court entered a decree appointing Henry C. Butcher, Sr., guardian of the minors. Charlotte Antelo, a maternal grandaunt of the minors, appealed.

*Error assigned* was the decree of the court.

*Walter George Smith,* with him *Henry M. Tracy,* for appellant.—The duty of the court is to select a guardian of the same religious faith as the parents of the minor and the spirit of the act requires that the court should make such an appointment wherever the circumstances are equivalent, as in this case, to the profession

of the same religious faith by both parents: Park's Est., 7 Pa. Dist. R. 700; Brown's Est., 166 Pa. 249.

*C. Berkley Taylor*, with him *Montgomery Evans*, for appellee.—The welfare of the children is the primary consideration to which all others must yield: Senseman's App., 21 Pa. 331; McCann's App., 49 Pa. 304; Gray's App., 96 Pa. 243; Park's Est., 7 Pa. Dist. R. 700; Pote's App., 106 Pa. 574.

The paternal grandfather, who is sought to be appointed guardian, is the nearest kin of these children, and would naturally be the person to take care of them: Mintzer's Est., 2 Pa. Dist. R. 584.

OPINION BY MR. JUSTICE FRAZER, March 1, 1920:

Henry C. Butcher, Jr., the decedent, a member of the Protestant Episcopal Church, and Constance Devereux, a member of the Roman Catholic Church, were married October 10, 1905, by a Roman Catholic priest. In accordance with the forms of the Roman Catholic Church and in compliance with the rules of that Church, Butcher, previous to the marriage, agreed that children born of the union should be educated in the Roman Catholic faith. The wife died in 1917 and the husband in 1918, leaving three children, aged four, eleven and twelve years, respectively. Following the death of the mother the father secured the appointment of his sister as guardian of the estates of the children. Subsequent to the father's death, a petition was presented to the Orphans' Court of Montgomery County asking that Henry C. Butcher, Sr., the paternal grandfather of the children, be appointed guardian of their persons. Objection to the appointment was made by Charlotte Antelo, a maternal grandaunt, on the ground that the proposed guardian "is not of the religious faith of the children or of their mother," and asking for the appointment of Alfred T. Devereux, the maternal uncle of the children, as their guardian. After hearing the evidence

the court appointed the grandfather and from this decree we have the present appeal.

Appellant concedes the guardian appointed is a man of excellent character and high standing, possessed of considerable property, is well able to care for the minors, has affection for them and announces his intention of amply providing for their future. The sole objection made to his appointment is that he is not of the Catholic faith. Unless this fact alone is sufficient ground for reversing, the decree must be affirmed, as the court below in the exercise of its discretion decided the best interest of the minors required the appointment of the grandfather.

There is no denial that decedent before marriage promised that "all children born of such marriage shall be brought up in the faith of their Catholic mother," and that he at all times showed every intention during his lifetime of carrying out such promise. Shortly before his death, in a letter to the children, he expressed the hope they would grow up to follow the religion of their mother, in accordance with her wishes. Accordingly, we have presented squarely the question whether the fact that the mother, being a Catholic, and the father, though Protestant, having promised, previous to marriage, that their children should be brought up in that faith, compels the court to appoint as guardian a person of the Catholic faith under section 59 (B) of the Fiduciaries Act of June 7, 1917, P. L. 447, which provides that "persons of the same religious persuasion as the parents of the minors shall in all cases be preferred by the court in their appointment as guardians of the persons of such minors."

It is important to notice that the guardian appointed by the court below, notwithstanding his membership in a Protestant church, testified he had no desire in any way to interfere with the religious training of the children, and in fact stated he would bring them up as Catholics until they were old enough to choose for them-

selves in such matters. He testified further that he considered their health and happiness of more importance than anything else. He also expressed himself as willing to follow any reasonable request or instruction as to the course to be pursued for their future religious welfare, though he frankly stated he would not agree to compel the children to constantly attend such religious services, or personally take them to a Catholic church, as he "did not believe in too intensive religious training." It thus appears that, notwithstanding the religious "persuasion" of the guardian is not the same as that of the children's mother, the former showed every inclination to respect the wishes of the parents as regards the minors' religious training. While the parents were alive the children were sent to Protestant schools. Following the mother's death the older boy was with his father part of the time and, upon the father's death, the two older children were sent to nonsectarian schools, while the youngest was placed in the care of an aunt, the father's sister.

Before the application for appointment of a guardian was made, counsel for the respective parties entered into negotiations with the view of coming to an amicable arrangement with respect to the religious education of the children, and also determine if provision could be made at their schools which would permit attendance at a Catholic church. The principal of each school stated that arrangements could be made for visits of a Catholic priest to the schools and for attendance at Catholic services, if their guardian so desired. It thus appears the guardian is in every way fully qualified to care for the minors, and agrees to bring them up in accordance with the wishes of the parents, the sole objection being that his personal religious persuasion is not the same as that of the children's mother. Is he to be rejected for this reason alone? We think not, unless a statute expressly commands such action. The court below concluded the Act of 1917 does not contemplate

a situation such as here presented, where the parents are of different religious beliefs, and the fact, that the father agreed the religious faith of the mother should be the one to be adopted for their children, did not make the religion of the mother the religion of the father, or the father of the same religious "persuasion" as the mother within the meaning of the act. We prefer to base our decision on the fact that the act was not intended to be mandatory, without regard to other circumstances, even though the religious beliefs of the parents be the same. The clause quoted above merely requires that persons of the same religious persuasion "shall in all cases be preferred" by the court. We do not construe this language to be a positive command to appoint such person, regardless of other considerations relating to fitness, or as taking from the court its discretion, nor in any way to relieve it of its duty to choose such person as in its opinion shall be best fitted to look after both the physical and spiritual welfare of the minor. The provision quoted requires that, as between two persons of equal standing and ability in other respects, the court is to appoint the one of the same religious faith as the parents, and only to this extent is the provision of the act intended to be mandatory. Otherwise, the words "shall be appointed" would doubtless have been used instead of "shall be preferred." The welfare of the child must remain the primary consideration to which all other questions must yield. Its interest is paramount and the court must consider not only the spiritual and temporal welfare but the minor's further training, education and morals, and the ability of the proposed guardian to best take care of the child in each and all of these respects.

In affirming the decree of the court below we conclude that (assuming the agreement and express desire of the father to be the equivalent of a religious "persuasion" within the meaning of that word as used in the Fiduciaries Act of 1917) the court was not bound to appoint one of the same religious persuasion but had the right,—

under the particular circumstances and in view of the willingness of the guardian to carry out the express wishes of the parents with respect to religious training, —to exercise a wise discretion and appoint the person, who, in its opinion, was best fitted to care for those entrusted to him.

The decree of the court below is affirmed.