Joseph A. Teece, Plaintiff-Appellant, v. Leo M. Boyle, Adjutant General of the Illinois National Guard; Richard Smykal and Harry L. Bolen, Defendants-Appellees.

Gen. No. 9,766.

Opinion filed November 6, 1951. Rehearing denied December 20, 1951. Released for publication December 20, 1951.

MONROE & McGAUGHEY, of Decatur, for appellant.

IVAN A. ELLIOTT, Attorney General of State of Illinois, of Springfield, for appellees; WILLIAM C. WINES, of Chicago and BAIRD V. HELFRICH, of Peoria of counsel.

MR. JUSTICE WHEAT delivered the opinion of the court.

Plaintiff, Joseph A. Teece, filed his complaint in the circuit court of Sangamon county, naming Adlai E. Stevenson, Governor of the State of Illinois, Leo M. Boyle, Adjutant General of the Illinois National Guard, Richard Smykal and Harry L. Bolen as defendants, and praying that the court enter judgment declaring illegal and void a certain order of the Military and Naval Department of the State of Illinois, issued February 3, 1950, signed by said Adjutant General and authorized by said Governor, purporting to relieve plaintiff of his duties as Commanding General of Troops, Illinois National Guard, and as Commanding General of the 44th Infantry Division and placing him on the retired list as Lieutenant General of the Line.

The complaint alleges that if the order complained of was invalid, no vacancies existed in the offices to which defendants Smykal and Bolen were appointed subsequent to issuance of the order and they were accordingly made parties defendant. On his own mo-

89

tion, Governor Stevenson was dismissed by the court as an unnecessary party defendant. Thereafter, defendants' motion to dismiss the complaint, on the ground that the action could not be maintained against the Executive Branch of the Government, and that declaratory judgment was not a proper action in which to try title to office, was overruled and the trial court took jurisdiction of the cause.

The complaint further alleges, and the answer admits, the following: plaintiff was appointed Major General of the Line of the Illinois National Guard on September 10, 1946. He thereafter qualified and entered upon the duties of that office and received federal recognition of his appointment as Major General of the Line.

At the time of plaintiff's appointment, chapter 129, section 108 of the Illinois Revised Statutes [Jones Ill. Stats. Ann. 80.106] provided as follows:

"Except where otherwise specified herein, all officers hereafter elected or appointed shall hold their respective offices until they are vacated by death, resignation or retirement, or by acceptance of another commission in the State Military or Naval Service or by sentence of a general court-martial or finding of a board of officers under Article XIV, Section 8, hereof: Provided, however, that no officer below the grade of lieutenant colonel shall be permitted to remain in service longer than five years without re-examination, both physical and professional; And, further, provided, that any commander having reason to believe that an officer of his command has become physically unfit for duty may require such officer to take a physical re-examination, though no officer may be required to stand re-examination oftener than once a year."

Thereafter, by act effective July 24, 1947, the foregoing was amended to read as follows:

"Except where otherwise specified herein, all officers other than the Adjutant General and officers of the State Staff on full time duty, now in active service or hereafter appointed shall hold their respective offices until they are vacated by death, resignation or retirement, or by acceptance of another commission in the State Military or Naval Service, or by sentence of a general court-martial, or finding of a board of officers under Article XIV, Section 8 hereof: Provided, however, that all Major Generals of the Line shall be appointed for three years and Brigadier Generals of the Line shall be appointed for five years, the terms of office of aforesaid to commence from the date of appointment, and officers so appointed shall be ineligible for reappointment in the same grade. The term of office for a Colonel of a Regiment or a Colonel serving as a Commanding Officer of a separate organization, or serving as Chief of Staff or other Staff officer of a line organization shall be seven years from the date of his appointment and he shall be ineligible for reappointment. The term of office of all commissioned officers shall be subject to the age-in-grade policy of the War Department and no commissioned officer shall be retained on duty after he reaches the age so prescribed as the maximum for his grade. And further provided that any commission in the National Guard of Illinois shall be subject to such rules and regulations as may be prescribed by the Secretary of War for a commission in the National Guard of the United States. Federal recognition with commission in the National Guard of the United States is established as a requirement for holding commission in the active National Guard of the State of Illinois; the commission of an officer in the National Guard of Illinois will be terminated upon his failure to obtain or retain Federal recognition."

It being further admitted that plaintiff did not vacate his office as a result of the happening of any of the contingencies mentioned in the statute in force at the time of his appointment, the issue before the trial court was whether or not plaintiff's tenure of office was affected by that part of the Amendatory Act of 1947, which provides:

". . . All Major Generals of the Line shall be appointed for three years . . . the terms of office of aforesaid to commence from the date of appointment and officers so appointed shall be ineligible for reappointment in the same grade."

Plaintiff alleged that the order complained of, purporting to be issued in conformity with the Amendatory Act, is void because that Act has no application to him. Defendants denying these allegations, alleged that the Amendatory Act lawfully limited plaintiff's term of office to three years and that computation of the three-year period dates from the time of plaintiff's appointment. The trial court, rejecting the views of both plaintiff and defendant, held that plaintiff's term was subject to the three-year limitation imposed by the Amendatory Act, but that the three-year period was to be computed as commencing, not on the date of his appointment, but on the effective date of the Act.

As the issue before the trial court was primarily a question of law, plaintiff rested on the pleadings. Defendants introduced evidence apparently intended primarily to show an administrative construction of the Amendatory Act, and the intention of the legislature in passing it.

 The evidence included testimony of General Charles C. Haffner, who stated that prior to passage of the amendment he was also a Major General in the Guard, and that he thought the Amendment applied to him, fixing his tenure at three years, beginning

from the date of his appointment. In its judgment order the trial court found, however, that no certain administrative construction of the Amendatory Act, applicable in the circumstances, had been shown, and was further unable to find that this testimony of Haffner was of any controlling force in construing the Act. Thus, the trial court in effect agreed with plaintiff's contention that there is no competent evidence in the record to prove an administrative construction of the Act, and as defendants have not perfected a cross-appeal from the judgment of the trial court, it appears unnecessary to consider in detail whether, as plaintiff contends, the trial court erred in admitting evidence bearing on this question. The same is true of the trial court's ruling on defendants' motion to dismiss the complaint.

Plaintiff's primary contention is that the Act, by its own unambiguous terms, does not apply in his case, and there is accordingly neither necessity nor authority for resorting to judicial construction. The crux of plaintiff's argument is simply that the word "shall," appearing in the proviso referring to the term of appointment of Major Generals, is a word of *futurity* and that accordingly the proviso clearly applies only to appointments of Major Generals made after the passage of the Act.

It is further urged that even though it is found necessary to resort to rules of statutory construction to ascertain the meaning of the Amendatory Act in question, the same conclusion inevitably follows. While plaintiff cites numerous decisions announcing these rules of construction he relies primarily upon the decision of the Supreme Court in *Eddy v. Morgan,* 216 Ill. 437. In that case the widow of a former police officer, who was retired on pension in 1891 and who died in 1897, sought payment of his pension to herself

93

under the terms of an Amendment to the Pension Law passed in 1899, providing that after the death of the pensioner his pension should be paid to his widow or child. The widow alleged that the Amendment was passed after repeated efforts by herself and other widows to obtain it and that the question of retrospectiveness was fully discussed and understood by the legislature which passed it. In refusing to grant relief the Supreme Court stated that retrospective construction is never favored, and in case of doubt a statute should be held prospective only; that words are to be given their ordinary meaning and courts cannot change the effect of a statute by introducing other words; that the action of the lobby and the opinion of legislators as individuals is inadmissible to prove the proper construction of a statute; that the fact that the legislature chose to give the pension of officers dying after the amendment to their widows is not evidence that the legislature intended that widows of officers dying prior thereto should also be pensioned; and that action of the Pension Board in allowing a pension to plaintiff and others over a period of five years did not amount to a long and uniform contemporaneous construction of the statute.

Plaintiff contends that this decision answers substantially every argument advanced by defendants in the trial court and that to declare the Amendatory Act applicable to him is to give it a retrospective effect contrary to the plain meaning of its language and in disregard of the rules of construction declared in this decision.

Of defendants' answer, that the statute, if applied, affects not the inception, but the termination of plaintiff's tenure, and therefore cannot be accurately termed retrospective, little need be said. Clearly, if the Amendatory Act is applied to plaintiff it is applied retrospectively in the sense that it imposes a limita-

tion upon his tenure which was not contemplated by the statute in force at the time of his appointment. The significant point in this connection is that, whatever label is applied, plaintiff does not dispute the constitutional authority or power of the legislature to enact a statute which imposes upon his term of office a limitation that did not exist at the time of his appointment, but contends that this power was not exercised in the statute here in question.

As to this issue defendants point out that ''public offices are not incorporeal hereditaments, nor have they the character or quality of grants . . . They are created for the benefit of the public and not granted for the benefit of the incumbent.'' (*Donahue v. Will County*, 100 Ill. 94), and that the considerations that ordinarily inhibit the retrospective construction of a statute even when such construction is constitutionally permissible are accordingly absent in this case.

Defendants also rely upon *Carlin v. Peerless Gas Light Co.*, 283 Ill. 142, and *Spaulding v. White*, 173 Ill. 127, to establish the proposition that where a statute creates a right unknown to the common law and fixes a time for the duration of that right, amendments to the statute shortening the time, apply to rights accrued under the statute before it was amended. Thus, in the former case, a person was killed April 9, 1903, under circumstances alleged to give rise to an action for wrongful death. At the time, the Injuries Act allowed two years for the commencement of suit. Suit was begun May 4, 1904, more than a year, but less than thirteen months after the date of death. On May 13, 1903, little more than a month after the death and a little less than a year before the action was begun, the Injuries Act was amended, effective July 1, 1903, reducing the time for commencement of actions for wrongful death to one year. Defendant asserted the one-year limitation as a bar, and plaintiff relied on

cases holding that a statute of limitation will not be applied to a cause of action accruing before the effective date of the Act. The Supreme Court found this rule inapplicable to a statute which, like the Injuries Act, at once created a right and limits the time of its duration.

In the *Spaulding* case, *supra,* the Supreme Court, applied similar reasoning to the statute creating the right to contest a will and limiting the time for exercise of that right. The will in question had been admitted to probate on March 29, 1894, the statute then in force allowing three years in which to file a bill to contest. The bill was filed within three years from the date of probate, but in 1895, the time for filing such a bill was reduced to two years. It was held that as a single statute created the right and fixed the time of its duration, the statute in force at the time the bill was filed determined the duration of the right even though it accrued before passage of the amended statute.

Defendants contend that this principle is well settled, and is applicable here because there is no common-law commission in the Illinois National Guard, such a commission being entirely statutory.

In answer to plaintiff's argument concerning the connotation of "shall" defendants urge that "shall" as distinct from "will" imports, not *futurity,* but *command.* That something "will" (not "shall") be done, connotes futurity; that something "shall" (*not* "will") be done, imports command. "Thou *wilt* not kill" would predict future behavior. "Thou *shalt* not kill" connotes present command. Restated in somewhat different terms, defendants' position seems to be that the provision "Major Generals shall be appointed for a term of three years" is, in effect, equivalent to, "The term of office of Major General shall be"—or, in other words, "is hereby declared to be"— three years.

96

As authority for this construction of the word "shall" defendants rely primarily upon the decision in *DeWolf v. Bowley,* 355 Ill. 530, where the Supreme Court, in interpreting a pension statute providing that "any judge of a court of record . . . shall . . . be entitled to . . . receive annually a pension during the remainder of his life," held the provision applicable to judges taking office before the Act was passed. The meaning of "shall" is somewhat more forthrightly recognized in *Chenoweth v. Chambers,* 33 Cal. App. 104, 164 Pac. 428, where it was observed that the word "shall" neither legally nor grammatically denotes futurity but conveys the idea of obligation.

In the case of *Kettles v. People,* 221 Ill. 221, an information was filed against defendant charging him with the unlawful practice of dentistry under a statute providing that no person, unless previously registered or licensed to practice dentistry "shall begin the practice of dentistry or dental surgery" without obtaining a license. Particular stress was laid upon the words "shall begin" by defendant, who insisted, as plaintiff does here, that unless those words were totally disregarded, contrary to the express legislative intention, a person who had practiced dentistry, even illegally, before the passage of the Act could not be subjected to the penalty therein provided, the intention of the legislature being that the Act apply only to those persons who began the practice of dentistry after the Act took effect. In spite of the fact that a criminal prosecution was involved, the Supreme Court had no difficulty in finding the statute applicable to the defendant. In reaching its decision the court observed that even before the passage of the statute in question it was unlawful to practice dentistry without being registered or licensed and the decision may perhaps be distinguished on that ground.

■ However, it does not appear that multiplication of authorities on one side or the other can serve

any useful purpose except to stand as examples of the fact that the connotation of the word "shall" is not fixed and inviolate and that its meaning in particular cases, however difficult of determination must be gained primarily from the legislature's intent as shown by the context in which the word is used.

The trial court specifically found in its judgment order that "the legislative intent in enacting the Amendatory Act was to prevent stagnation in the Illinois National Guard with respect to certain officers of the Line—that is Brigadier Generals, Colonels and Major Generals—by limiting the terms of their respective offices to a fixed number of years." Plaintiff contends that this finding has no decisive effect in arriving at the proper construction of the statute in question. He does not, however, question the propriety of the finding itself, at least insofar as it is based upon the language of the statute.

To the extent the trial court meant, in finding the intention of the legislature was to prevent stagnation, that the legislature intended a rather frequent turnover of the office in question, such purpose in our opinion is evident from the very language which is in dispute. It matters not whether the word "shall" is taken as a word of futurity or of command. In either event it is sufficiently clear that the legislature intended that at some time or other the office of Major General should not be held more than three years, and whether this policy is a desirable one is, of course, for the legislature to decide. The only real question which the statute leaves open to doubt, is the question when that policy is to go into effect. If plaintiff's contention is correct the policy could not be fully in effect until such time as those Major Generals incumbent when the Amendatory Act was passed had either died, resigned, retired, accepted such Commission as the former Act specified, or had been sentenced by a gen-

eral court-martial, each of which is a contingency, the happening of which is not readily predictable. This factor seems to gain added significance in view of the statutory requirement that to hold the office in question the officer must be federally recognized and that under federal regulation, as the evidence showed, only two Major Generals may, under federal regulation, be so recognized at any one time. If the legislature felt strongly enough about the term of this office to pass legislation concerning it, as they did, it seems it would be entirely unreasonable to construe the statute in such manner that its effective date as to the office in question, and certain other offices, would in fact lie at some indeterminable time in the future.

To the same effect, defendants point out that the construction of the act contended for by plaintiff would result in ''freezing'' the commissions of those Major Generals incumbent at the time the Act was passed, while limiting the tenure of all Major Generals appointed in the future, and that such a reading of the text could not possibly serve any conceivable military or other public purpose.

■ Plaintiff's reply is that under the circumstances in which the Amendatory Act was passed ''it is not to be presumed that the Illinois Legislature intended to discard its two highest ranking officers, officers whose experience and proven ability qualified them to lead the divisions into the field should it be necessary. On the contrary, the logical assumption would be that the legislature purposely omitted them from the operation of the statute and that the Amendment was intended to apply only during later years to less experienced and less qualified officers, who might eventually succeed them as Major Generals.'' In response it seems necessary to say only that, except for the language of the statute which does not sustain this argument, there is no evidence whatever in the record

99

tending to show that the legislature did intend that the two officers incumbent at the time of the passage of the Amendatory Act be retained in office indefinitely. Moreover, the only evidence concerning the qualifications of these incumbents is a part of the same proof which plaintiff contends ''had no bearing upon the proper construction of the statute.''

It is the opinion of this court that the judgment of the trial court is correct, and it is accordingly affirmed.

*Affirmed.*