Dwayne Cooper and Iva Cooper, Petitioners-Appellants, v. Joan Hinrichs et al., Defendants-Appellees, and Catholic Charities of Diocese of Rockford, an Illinois Corporation, Intervening Defendant-Appellee.

## Gen. No. 10,878.

Second District.

December 8, 1955.

Released for publication December 28, 1955.

145

William S. Freek, of Belvidere, and Pedderson, Menzimer, Carl & Conde, of Rockford, for appellants; L. W. Menzimer, and Dale F. Conde, both of Rockford, of counsel.

Russell J. Goldman, and Harold Stern, both of Rockford, for appellees; Russell J. Goldman, and Harold Stern, both of Rockford, of counsel; Raphael E. Yalden, of Rockford, for Catholic Charities of Diocese of Rockford.

JUSTICE EOVALDI delivered the opinion of the court.

Petitioners sought to adopt the twin daughters of the defendant, Joan Hinrichs, who had permitted them shortly after their births to be declared dependent children by the County Court of Boone County. The court appointed Warren B. Tanner, probation officer of said county, legal guardian of the children and he placed them first in the St. Vincent's Home for Children at Freeport, Illinois, a Catholic institution, and then in the home of the petitioners, who subsequently filed separate petitions to adopt the two girls in the County Court of Boone County. The two petitions were consolidated for trial and the court permitted the Catholic Charities of the Diocese of Rockford, an Illinois corporation, to intervene as a defendant.

The principal contention of the defendant, Joan Hinrichs, and of the intervening defendant, the Catholic Charities of the Diocese of Rockford, was that the petitioners, who were Protestants, were not proper persons to adopt the children because the mother of the children was of Roman Catholic faith and the chil-

146

dren themselves had been baptized into the Catholic faith at the request of the mother when they were twenty-three days old. The father of the children, who was of the Lutheran faith, entered his appearance and consented to the adoption. After a full hearing, the County Court of Boone County entered an order denying the petitions for adoption and the petitioners have appealed from that order.

Petitioners contend that it was error for the trial court to allow the intervention of the Catholic Charities of the Diocese of Rockford and that it was error for the court to deny the petitions for adoption because of the difference in the religion of the petitioners and in the religion of the children and their mother.

It is established by the evidence that the petitioners are of good moral character and are capable of properly caring for and rearing the children. On the other hand, from the evidence, we find the mother's earliest attention and interest in the twins directed to their spiritual welfare. As is required in many denominations, the mother had these two little girls baptized on Easter Sunday at St. James Church in Belvidere, where they were born, and thus they became members of the Catholic Church. It is undisputed that the mother was in straightened circumstances at the time she sought assistance long before the children were born. The intervening defendant-appellee, Catholic Charities of the Diocese of Rockford, was asked for assistance in supervising and administering care to the mother at the instance of an employee of the township relief office. The Charities interviewed the mother and sent her to Aurora to a hospital. The township relief office wanted her returned to Belvidere, so she was returned, and gave birth to the twins at St. Joseph's Hospital in Belvidere.

Some three or four hours before the children were born, one of the attorneys representing petitioners in this cause, who had represented the mother when she

obtained a divorce, came to the hospital while the mother was in labor, and had her sign an agreement whereby the twins would be adopted out. After the children were born, the mother refused to go through with the adoption. This was another indication of the mother's interest in her children. The attorney came back the night of the births and argued with the priest and the mother about her keeping the children and about the payment of the expenses of the births. The mother told the attorney she had changed her mind about adopting the children out. Mr. Tanner, the probation officer, was in court on May 2, 1954, when the mother stated she wanted her children declared dependent and placed in St. Vincent's Orphanage. At that time she asked Mr. Tanner if the twins were to be left at St. Vincent's Orphanage and he said "yes." The Children were taken to the Orphanage at that time. This was another indication on the part of the mother of her continued interest in the spiritual welfare of the children and of her desire that they be reared in the faith in which they had been baptized. On August 4, 1954, the mother went to see the twins at the Orphanage and was told Mr. Tanner had taken them. He did not tell her where the children were. It was necessary for the mother to get a court order to see the children.

The mother was baptized in the Catholic Church in Chicago when she was a baby. She regarded her faith at the time of the trial as Catholic.

■■■■ We must distinguish the rights of the parties and the authority of the court in an adoption matter such as this, from a chancery action involving mere custody of a child. Custody is one thing, adoption is another, and a clear and convincing case must be made to warrant adoption. Oeth v. Erwin, 6 Ill. App.2d 18, 126 N.E.2d 526; Hill v. Allabaugh, 333 Ill. App. 602 at page 607. Adoption which changes the course of inheritance, deprives the child of the place

in which it was placed by nature, and by force of law, thrusts it into another relationship; so that in this respect it differs from mere change of custody which is usually on a temporary basis. Jackson v. Russell, 342 Ill. App. 637; Hill v. Allabaugh, supra. In adoption, it is not the duty of the court to determine if petitioners could best provide for the children. The court must first determine that statutory grounds for adoption exist. Oeth v. Erwin, supra; Jackson v. Russell, supra, at page 639. A parent has the right to his child against all the world unless he has forfeited that right according to law, or the welfare of the child demands that he be deprived of it, Harmon v. Starbody, 219 Ill. App. 603 at page 605, and the rights of a natural parent will not be disturbed unless petitioners make out a case by clear and satisfactory evidence. Keal v. Rhydderck, 317 Ill. 231; Hill v. Allabaugh, supra.

■ Chapter 4, "Adoption of Children," Ill. Rev. Stat., 1955, Sec. 4—2 [Jones Ill. Stats. Ann. 19.012 (15)], entitled "Adoption by persons of same religious belief" provides as follows: "The court in entering a decree of adoption shall, whenever possible, give custody through adoption to a petitioner or petitioners of the same religious belief as that of the child." No Illinois case has been cited construing this provision in the Adoption Act. It is the position of the petitioners that the statute is directory only and not mandatory, and that when the situation exists, as in this case, where the mother and the father of the children are of different religious faiths, that the statute should be disregarded. This is a matter within the trial court's province.

The State of Massachusetts has a similar statute which reads (General Laws (Ter. Ed.) C. 210, Sec. 5 B, inserted by St. 1950 C. 737 Sec. 3)—"In making orders for adoption, the judge when practicable must give custody only to persons of the same religious faith as that of the child. In the event that there is a

149

dispute as to the religion of the said child its religion shall be deemed to be that of its mother. If the court, with due regard for the religion of the child, shall nevertheless grant the petition for adoption of a child proffered by a person or persons of a religious faith or persuasion other than that of the child, the court shall state the facts which impelled it to make such a disposition and such statement shall be made part of the minutes of the proceedings."

The Massachusetts court, in the case of Ellis v. McCoy, 124 N.E.2d 266, at page 268, stated "Since the enactment of St. 1950 c. 737, Sec. 3 (now G. L. (Ter. Ed.) c. 210 Sec. 5 B) in passing upon a petition for adoption, a court is 'bound to give controlling effect to identity of religious faith when practicable.' Petition of Gally, 329 Mass. 143, 149, 107 N.E.2d 21, 25. The statute was held to be constitutional in Petitions of Goldman, 331 Mass. 647, 121 N.E.2d 843. It is apparent from the findings that the judge allowed the motion to withdraw consent principally because of the difference between the religious faith of the mother and that of the petitioners. In disposing of the motion he must have realized that its allowance would require the dismissal of the petition for adoption. In view of the important bearing of the religious factor on the merits of the petition it cannot be held that the weight which was given to that factor in passing upon the motion was error in law."

The trial court in dismissing the petitions for adoption gave effect to the statutory provision dealing with the difference in religious faith of the petitioners and of the children who were the subject of the adoption. The evidence presented by the Catholic Charities of the Diocese of Rockford by Father Michael J. Shanahan, Director, was to the effect that he supervised social workers for the organization known as Catholic Charities, which in turn existed for the sole purpose of caring and nurturing and placement of the chil-

dren; that the Catholic Charities was operated by the Diocese of Rockford, which comprises 11 counties in Northern Illinois, one being Boone County, of which Belvidere is the county seat; that it has a staff of 11 case workers and 5 secretaries; that one of the prime services of Catholic Charities is adoptions. He testified "Mothers are referred to it by members of the family, by doctors, by lawyers and sometimes by neighbors. We interview the mother. . . . We confer with the mother while she is being confined to see if she wishes to retain the child or place it for adoption." The evidence further showed that there were numerous Catholic families whose homes were visited, who were thoroughly investigated and screened, who were seeking children to adopt, who had sufficient funds, were of good reputation, and who would be available to adopt the twins.

██ The lower court had the advantage of seeing and hearing testimony of the parties and of the witnesses. The trial judge was in a better position than a court of review to weigh the evidence. The determination of the weight to be afforded their testimony were matters for the trial court. The trial court in denying the petitions for adoption on the basis of the statute referred to above was clearly within its discretion and committed no error which would justify a reversal of its decision.

The remaining question in the case is the contention of petitioners that it was error for the trial court to allow the intervention as party defendant of the Catholic Charities of the Diocese of Rockford. As previously pointed out, the Catholic Charities was brought into this family before the twins were born. The Adoption Act provides that the provisions of the Civil Practice Act shall apply to all proceedings under the Act except as otherwise specifically provided. (Ill. Rev. Stats., 1955, Ch. 4, Sec. 7—1 [Jones Ill. Stats. Ann. 19.012(20)].)

151

 The Civil Practice Act expressly provides for the joinder of defendants, for bringing in new parties, and for allowing intervention. (Ill. Rev. Stats., 1955, Ch. 110, Secs. 24, 25, 26 and 26.1 [Jones Ill. Stats. Ann. 104.024, 104.025, 104.026, 104.026(1)].) The only limitation found in the Adoption Act is that contained in said Sec. 7—1 that no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise. (Ill. Rev. Stats., 1955, Ch. 4, Sec. 7—1.) The general rule governing intervenors is expressed in Bachellor v. Dockterman, 291 Ill. App. 418, wherein the court says, on page 422:

"In equity, although no one is entitled to be made or become a party to a suit who has not an interest in its object, yet it is the usual and better practice to permit strangers to the litigation who claim an interest in the subject matter, to intervene and assert their titles on their own behalf."

 In Hurley v. Finley, 6 Ill.App.2d 23, 126 N.E.2d 513, a case at law, the court held that intervention was largely a matter within the trial court's discretion, and that the allowance or disallowance by the trial court of intervention would not be disturbed on appeal, unless clear abuse was shown. To the same effect is Jackson v. Pioletti, 346 Ill. App. 569.

We are of the opinion that the trial court properly allowed said defendant, the Catholic Charities of the Diocese of Rockford, to intervene in this cause as a party defendant. The judgment of the trial court is affirmed.

Judgment affirmed.

PRESIDING JUSTICE DOVE specially concurring:

The Adoption Act provides that no matters not germane to the distinctive purpose of the proceed-

ing shall be introduced by joinder, counterclaim or otherwise. In Bachellor v. Dockterman, 291 Ill. App. 418, at page 421, it is said: "A party intervening must show that he has a substantial interest in the subject matter of the suit and of such a character that his rights will be directly affected by the decree entered." In my opinion, the Catholic Charities of the Diocese of Rockford has no interest in the subject matter of this proceeding and its rights·are not directly affected by the order entered herein. The record discloses that prior to the filing of the instant petitions, these children were declared dependent and a guardian appointed for them who was given their custody. The responsibility of protecting the interests of these children is that of the parents, the guardian and the court. The father of these children was a Lutheran and the trial court, had application been made, in order to be consistent, would have granted a Lutheran Institution permission to intervene and make such assertions as might occur to it as material to this proceeding. The merit of the petition for adoption should be based upon the evidence presented by the petitioners in support thereof and the evidence submitted by the necessary party defendants. The policy considerations relative to this adoption should not have been permitted to be advanced by an intervening defendant of one particular religious faith. While the court erred in permitting the Catholic Charities of the Diocese of Rockford to intervene, that error does not necessitate a reversal of the judgment.