(No. 33950.—

DWAYNE COOPER *et al.*, Appellants, *vs.* JOAN HINRICHS *et al.*, Appellees.

*Opinion filed January 24, 1957.*

Hershey and Schaefer, JJ., dissenting.

Pedderson, Menzimer, Carl & Conde, of Rockford, (L. W. Menzimer, and Dale F. Conde, of counsel,) for appellants.

Russell J. Goldman, of Rockford, for appellee Joan Hinrichs, and Raphael E. Yalden, of Rockford, for appellee Catholic Charities of the Diocese of Rockford.

Mr. Justice Bristow delivered the opinion of the court:

This cause is heard on petition for leave to appeal filed by plaintiffs, Dwayne Cooper and Iva Cooper, from a judgment of the Appellate Court affirming the county court's denial of their petition for adoption of the twin daughters of defendant, Joan Hinrichs.

The primary inquiry presented on this appeal is whether section 4—2 of the Adoption Act (Ill. Rev. Stat. 1953, chap. 4, par. 4—2,) imposes a mandatory duty upon the trial court to deny a petition for adoption where the religion of the adopting parents differs from that of the children.

From the record it appears that the children sought to be adopted were born March 28, 1954, some five months after defendants Joan Hinrichs and Rudolph Hinrichs were divorced. Prior to their birth, the mother, Joan Hinrichs, signed an agreement for their adoption, which she subsequently repudiated.

On May 2, 1954, the mother permitted the twins to be declared dependent in a proceeding brought under the Family Court Act, (Ill. Rev. Stat. 1953, chap. 23, pars. 190-220,) and the county court appointed the probation officer as the legal guardian of the children. He placed the twins in St. Vincent's Home for Children at Freeport, Illinois, for several weeks, and then on August 2, 1954, he placed them with plaintiffs, who have continuously cared for the children.

The petition for adoption was filed by plaintiffs on August 31, 1954, and was consented to by the children's father, Rudolph Hinrichs, but contested by defendant Joan Hinrichs. Plaintiffs then alleged that, under the terms of the Adoption Act, the mother was unfit to have custody of the children by reason of depravity, open and notorious adultery, and habitual drunkenness for year prior to the filing of the petition.

In her answer, defendant Joan Hinrichs denied the allegations, and asserted that plaintiffs were of a different religious faith than the children and, therefore, could not adopt them under the terms of section 4—2 of the Adoption Act. The same contention was argued by the Catholic Charities of the Diocese of Rockford, which was allowed to intervene as a party defendant over plaintiffs' objection.

From the evidence it appears that plaintiffs are members of the Presbyterian church, and intend to raise the children in that faith. The children, however, were baptized in the Roman Catholic faith, although their father was a Lutheran, and the three other children in the family had been baptized as Lutherans. Those children had also

been declared dependent, and since January 20, 1954, have been living in St. Vincent's Home.

There is conflicting evidence as to whether the mother of the children, defendant Joan Hinrichs, was, in fact, a Catholic, and on the issue of her fitness as a mother. Testimony was presented of her drunkenness, her arrest for disorderly conduct, and her course of illicit relations with men both before and after her divorce from the father of the twins. The evidence, however, is uncontroverted that plaintiffs are of good moral character and are capable of properly caring for and rearing the children.

The trial court, while recognizing that plaintiffs were otherwise qualified to adopt the children, nevertheless denied the adoption on the ground that it was barred by section 4—2 of the Adoption Act, since the religion of the plaintiffs was different from that of the children. The Appellate Court, in affirming that judgment, held that the trial court's interpretation of the statute should not be disturbed, and that there was no error in allowing the Catholic Charities to intervene.

Plaintiffs' right to adopt the children depends upon the proper construction of section 4—2 of the Adoption Act, which is a question of law on which this court must be the final arbiter. The section provides: "The court in entering a decree of adoption shall, whenever possible, give custody through adoption to a petitioner or petitioners of the same religious belief as that of the child."

The terms of the statute do not themselves indicate unequivocally whether the statute is mandatory or discretionary in character. The word "shall" appearing therein does not have an exclusive, fixed or inviolate connotation, and has been construed as meaning both "must" and "may," depending upon the legislative intent. (*Teece* v. *Boyle,* 345 Ill. App. 88; *O'Donoghue* v. *St. Louis South Western Railway Co.* 181 Ill. App. 286; *Perkins* v. *Cooper,* 155 Okla. 73, 4 P.2d 64; *Simmons* v. *State,* 160 Fla. 626, 36 So.2d.

207.) The use of the words "whenever possible" in the statute, however, does suggest that the legislature contemplated that identity of religion between adopting parents and children would not be followed in all adoptions.

This provision has not been construed in Illinois. Comparable statutes enacted in most States have been given varying constructions which cannot be attributed to differences in statutory phraseology alone. (65 Harv. L. Rev. 694; 54 Col. L. Rev. 376; 5 DePaul L. Rev. 89.) The prevalent judicial attitude, however, has been to construe such statutes as advisory and discretionary, whereby the religious faith of the adopting parents is a matter for consideration, among all the circumstances of gradational significance in promoting the welfare of the child. Under this approach, a difference in the religion of adopting parents and children will not *per se* bar the adoption. 23 A.L.R.2d 703; 2 C.J.S. 425; 22 A.L.R.2d 696, 699; *Adoption of Royer,* (Pa.) 34 *Del. Co.* 402; *In re Butcher's Estate,* 266 Pa. 479, 109 Atl. 683; *In re McKenzie,* 197 Minn. 234, 266 N.W. 746; *State* v. *White,* 123 Minn. 508, 144 N.W. 157; *In re Duren,* 355 Mo. 1222, 200 S.W.2d 343; *State ex rel. Baker* v. *Bird,* 253 Mo. 569, 162 S.W. 119; *Donie* v. *Ferree,* 106 A.2d 681; *Commonwealth ex rel. Kuntz* v. *Stackhouse,* 176 Pa. Super. 361, 108 A.2d 73.

However, the courts of New York and Massachusetts have given controlling weight to the natural parents' right to select the child's religion. (*In re Santos,* 105 N.Y.S.2d 716; *Petition of Goldman,* 331 Mass. 647, 121 N.E.2d 843; *Ellis* v. *McCoy,* 332 Mass. 254, 124 N.E.2d 266.) These decisions may be explained in part, if not distinguished, by the fact that the statutes in those States use the word "must" and require the court to set forth in the record the facts which impelled it to make any other disposition, thereby indicating a legislative intent to impose a more stringent rule. It should be noted, furthermore, that the Massachusetts court originally adhered to the cri-

teria of the welfare of the child, (*Purinton* v. *Jamrock*, 195 Mass. 187, 80 N.E. 802,) and construed the statute comparable to our section 4—2 as in no way indicating a legislative intent that identity of religion shall be the sole or necessarily the principal consideration. *Petition of Gally*, 329 Mass. 143, 107 N.E.2d 21.

The Pennsylvania court in *Adoption of Royer* construed as discretionary a provision practically identical to section 4—2. The Pennsylvania statute (Title 1, sec. 1, Purdon's Pa. Stat. Anno.) provides: "Whenever possible the petitioner shall be of the same faith as the natural parents of the child to be adopted." The court held that differences in religious faith between natural and adopting parents will not preclude an adoption, if it will best promote the welfare of the child.

This decision followed the reasoning advanced in the earlier Pennsylvania case of *In re Butcher's Estate*, 266 Pa. 479, 109 Atl. 683, where the court, in construing a similar statute, held that it did not relieve the court of its duty to choose such person as, in its opinion, shall be best fitted to look after the physical as well as spiritual welfare of the minor, including his further training, education and morals, and that the welfare of the child is the primary consideration to which all other questions must yield. The court stated: "We do not consider this language to be a positive command to appoint such persons regardless of other considerations relating to fitness, or as taking from the court its discretion."

The Missouri court has taken the same position. (*State ex rel. Baker* v. *Bird*, 253 Mo. 569, 162 S.W. 119; *In re Duren*, 355 Mo. 1222, 200 S.W.2d 343.) In the *Bird case* the court construed as discretionary only a statute which provided that a minor shall not be committed to the guardianship of a person of religious persuasion different from that of the parents if another suitable person can be found. The court implied, moreover, that to give religious differ-

ences controlling weight in adoption cases would transgress the State's policy of religious liberty. In the *Duren case* the court construed the same statute, as well as a similar provision in the Juvenile Court Act, and held that practicalities and temporal considerations were to be considered first under such statutes.

The Minnesota court, in construing a statute comparable to section 4—2, (Minn. Codes, 1949, sec. 260.20,) has also given controlling emphasis to the best interests and welfare of the child. Religion is considered as only one factor; consequently, adoptions and guardianships will not be barred merely on the grounds of religious differences. *State v. White,* 123 Minn. 508, 144 N.W. 157; *In re McKenzie,* 197 Minn. 234, 266 N.W. 746.

These decisions of other jurisdictions, while not determinative, are entitled to respect. In adoption cases in this jurisdiction, although we have insisted upon compliance with the jurisdictional requisites, the polestar in all such cases has always been the welfare and best interests of the child. In fact, section 4—1 expressly sets forth that requirement. We cannot, under the guise of enforcing section 4—2, avoid the complex inquiry of what is the child's best interests by holding that the statute sets forth a "rule of thumb" which automatically precludes adoptions by persons, otherwise well qualified, if their religion is different from that of the child's natural parents, as defendant suggests, and as the trial court felt impelled to do. Nor is section 4—2 of the Adoption Act couched in such unequivocal terms as to indicate a legislative intention to abandon the standard of the best interests of the child, or to create an irrebutable presumption that it is always to the child's best interest to be trained in the religion of his natural parents, irrespective of other factors.

On the other hand, we do not imply that religious affiliation is no more significant than it would be in the absence of such a provision as section 4—2. This section

is one of several similar provisions in the Illinois statutes pertaining to the religious affiliation of persons to be given custody of children, (Ill. Rev. Stat. 1953, chap. 23, pars. 26, 211, 299b1,) and indicates a legislative intention to stress the religious factor and to direct the court to give preferences to persons of the same religion as the child to be adopted, where they are otherwise qualified to promote the welfare of the child. It does not, however, bar adoption irrespective of all other factors merely because the adopting parents are of a different religious persuasion than the child.

In each instance the court has discretion to determine primarily whether the child's best interests are served by the adoption, and identity of religion between the child and the adoptive parents is a significant and desirable but not an exclusive factor to be considered by the court in the exercise of this discrtion. Such a construction pays respect to the desire of the natural parents that their child will be accorded the benefits which they believe are afforded by the particular religion they profess, and at the same time does not allow this potential benefit to jeopardize the welfare of the child or be at the expense of the child's best interests.

In the light of this interpretation of section 4—2 of the Adoption Act, it is our judgment that the cause should be reversed and remanded to the trial court for further proceedings on plaintiffs' adoption petition, to ascertain upon wider examination of the facts and circumstances whether in the discretion of the court the adoption in the instant case would in fact promote the best interests of the children, in view of the difference in religion of the adopting parents and the children.

As a further ground for reversal, plaintiffs contend that the intervention of the Catholic Charities was improper under the Civil Practice Act. Section 26.1(2)(b)

of the Civil Practice Act provides: "Upon timely application anyone may in the discretion of the court be permitted to intervene in an action * * * when an applicant's *claim* or *defense* and the main action have a question of law or fact in common." (Italics added.)

Although this recent amendment has not been construed by the Illinois courts, it is patterned after Federal Rule 24(b) (28 U.S.C.A. § 723) which has been interpreted to require that the applicant have an enforceable or recognizable right and more than a "general interest" in the subject matter. 4 Moore, Federal Practice, 60; *Jewell Ridge Coal Co.* v. *Local 6167 of the U.M.W.* 3 F.R.D. 251, 7 F.R. Serv. 2462; *Bernstein* v. *Nederlandske*, 76 F. Supp, 335; 2 Barron & Holtzhoff, Federal Practice & Procedure, 223; *United States* v. *General Electric Co.* 95 F. Supp. 165; *Fielding* v. *Allen*, D.C. N.Y. 1949, 9 F.R.D. 106.

In the instant case, unlike the cases cited by defendants in support of the intervention (*In re Doe's Adoption*, 45 Wash.2d 644, 277 P.2d 321; *Commonwealth ex rel. Kuntz* v. *Stackhouse*, 176 Pa. Super. 361, 108 A.2d 73; *In re McDonald's Adoption*, 43 Cal.2d 447, 274 P.2d 860,) the Charities had neither custody nor any other legal right with reference to the children sought to be adopted. Even if the court were to adjudicate the cause in accordance with intervenor's interpretation of the law, the decree could not confer upon intervenor any rights different from those enjoyed by members of the public. Admittedly, intervenor is interested in having the statute given a particular interpretation, and has introduced only matters germane to the issues, but that type of interest cannot be deemed tantamount to a "claim" or "defense" specified in the Civil Practice Act. However, inasmuch as we have reversed and remanded the cause on the substantive ground that the trial court erred in its construction of section 4—2 of the Adoption Act and have directed the trial court to entertain fur-

ther proceedings on the propriety of granting the adoption petition, it is not necessary to determine whether the intervention herein constituted prejudicial error.

*Reversed and remanded, with directions.*

Mr. JUSTICE HERSHEY, dissenting:

There can be no doubt that the words "whenever possible" vest the court with discretion. As I interpret that discretion it is not limited solely to the question whether there are, or can be found, persons of the same religious belief willing to adopt the child; it includes other relevant considerations as well. But it is not a discretion that permits the court to omit entirely the question of religious belief or to depreciate the high priority that the legislature clearly intended it to have. In this case the record shows that the probation officer completely disregarded the statute. His unremitting efforts to bring about the adoption of these children by the petitioners began before the children were born. The record further shows that there were numerous Catholic families whose homes had been investigated by a licensed child welfare agency, who were seeking children to adopt, were of good reputation, and who were available to adopt these children. Under these circumstances, it seems to me that the trial court was clearly within its discretion in dismissing the petition and that the Appellate Court correctly sustained that action. 8 Ill. App.2d 144.

So far as intervention is concerned, the opinion of the court suggests a literal application of the provisions of section 26.1 of the Civil Practice Act. (Ill. Rev. Stat. 1955, chap. 110, par. 26.1.) Adoption proceedings have unique characteristics, however, and the legislature has recognized them in the statute relating to adoptions, where it is provided that the court "shall specifically designate either a licensed child welfare agency, probation officer of the court, or some other suitable agency or person" to investigate the circumstances of the case and report to the

court. (Ill. Rev. Stat. 1955, chap. 4, par. 3—1.) Such an *ex parte* report is unknown in adversary litigation. I think that the recognized capacity of licensed agencies to render important assistance in these unusual cases, makes inappropriate a literal application of the rules that govern intervention in other cases.

Mr. JUSTICE SCHAEFER concurs in the foregoing dissent.