MELVIN B. ELLIS & another *vs.* MARJORIE J. McCOY.

Norfolk. October 4, 5, 1954. — February 14, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Adoption. Probate Court,* Stipulation. *Estoppel.*

In a proceeding for adoption of an illegitimate child of tender years, the Probate Court possessed power to allow a motion by the mother of the child for leave to withdraw and revoke her written consent to the adoption, although her consent had been voluntarily given with full knowledge of its legal consequences. [258]

In a proceeding after the enactment of G. L. (Ter. Ed.) c. 210, § 5B, inserted by St. 1950, c. 737, § 3, for adoption of an illegitimate child of tender years by petitioners of a religious faith different from that of the child, the judge of the Probate Court was justified in allowing as matter of discretion, principally on the ground of such difference in

religious faiths, a motion by the mother of the child for leave to withdraw and revoke her written consent to the adoption. [258-259]

In the circumstances, although all the confinement expenses attendant upon the birth of an illegitimate child had been paid by prospective adopters of the child, to whose petition for adoption the mother voluntarily consented in writing, and they had taken the child at birth and had cared for the child for a substantial period, the mother was not estopped from seeking to withdraw and revoke her consent after learning of their identity and religious faith. [259]

PETITION for adoption, filed in the Probate Court for the county of Norfolk on March 29, 1951.

The petitioners appealed from decrees entered on June 15, 1953, after hearing by *Reynolds,* J., allowing a motion by the respondent for leave to withdraw and revoke her consent to the petition for adoption and dismissing the petition.

*James Zisman,* for the petitioners.

*John F. McAuliffe,* for the respondent.

WILLIAMS, J. These are appeals by Melvin B. Ellis and his wife, Frances V. Ellis, from two decrees entered in the Probate Court after a hearing on their petition to adopt the illegitimate female child of the respondent, Marjorie J. McCoy. The evidence is reported and the trial judge has filed a report of the material facts, which are summarized as follows.

In August, 1950, the respondent, an unmarried woman, twenty-one years of age, who is referred to hereinafter as Marjorie, discovered that she was pregnant. She told her mother of the fact and the mother consulted a physician whom she knew, one Dr. Sands, as to what should be done. Dr. Sands learned that the petitioners, Mr. and Mrs. Ellis, wished to adopt a child. He talked with them about an adoption and determined that they were suitable persons to be adoptive parents. He did not tell them the name of the prospective mother. They were willing to adopt the child when born and agreed to pay all confinement expenses which were estimated to be about $500. Marjorie and her mother were informed of the arrangement and were pleased because they wished to avoid any publicity. Marjorie was not told and she did not wish to know who the people

were who were going to adopt her child. Nothing was said to her by Dr. Sands as to the religious belief of the petitioners although in fact they were of the Jewish faith and Marjorie was of the Roman Catholic faith.

The child was born on February 23, 1951, in a Boston hospital. Mr. Ellis as had been agreed paid all expenses including a payment to Marjorie's mother to reimburse her for certain expenditures. The child was taken by the petitioners from the hospital and has remained in their home ever since. The petitioners engaged an attorney, suggested by Dr. Sands, who prepared a petition for the adoption of the child. The petitioners signed it without seeing on it the name of the mother which was purposely covered over. Marjorie consented to the petition by signing it in the hospital on March 5, 1951. Her mother signed as a witness to Marjorie's signature. The names of the petitioners were covered when Marjorie signed the petition as she still did not wish to know who they were. As Marjorie's signature on the petition had not been dated and notarized, she was called by the petitioners' attorney to his office on March 27 when she again signed the petition, and her new signature was dated and attested before a notary public. On this occasion Marjorie first learned that her child was with a "nonCatholic" family. She became "disturbed and apprehensive." The attorney read to her the "new" adoption statutes and told her that the petition would not be allowed for at least a year and that "she had time to think things over and to change her mind." Early in April when she called with her mother on Dr. Sands she learned that the child was with a Jewish family. "This information greatly upset Marjorie who promptly demanded the return of her child so she could have her brought up a Catholic." She was also displeased when she learned later that both Mr. and Mrs. Ellis previously had been divorced. On May 15, 1951, she met the Ellises at the attorney's office and demanded that the child be given back to her. The Ellises were determined to keep the child. The Ellises are suitable people to adopt the child.

The child is happy with them and they have grown to love her. The child is being brought up in the Jewish faith and "Marjorie wants her brought up a Catholic, and the issue has now become a matter of conscience with her." The judge found that Marjorie consented to the petition by persons unknown to her "under strong pressure exerted upon her by both Dr. Sands and her own mother"; but it does not appear that her consent was not voluntary and made with full knowledge of its legal consequences. The mother feared that a disclosure of her daughter's pregnancy would injure the family name and the prevention of notoriety was her first concern. The "religious issue" is the primary reason for Marjorie's present objections to the allowance of the petition for adoption. She has become conscience stricken due to religious scruples.

On March 29, 1951, Mr. and Mrs. Ellis filed the petition for the adoption of the child. In the late summer or the early fall of 1951 Marjorie signed a motion "to strike out her name wherever it appears alleging consent; and . . . that the court allow her to withdraw and revoke her alleged consent." This motion was not filed in court until June 9, 1953. On the same day she filed a petition that she or some other suitable person be appointed guardian of the child with custody. The two petitions and the motion were heard together on or about June 15, 1953. The judge entered three decrees. In one he allowed the motion for the right to withdraw consent "both as a matter of discretion and as a matter of law" and declared the consent to be null and void. In the second he decreed that the petition for adoption be dismissed "both as a matter of discretion and as a matter of law." In the third he stayed the decision of the court on the petition for guardianship with custody until claims of appeal should be disposed of. Mr. and Mrs. Ellis appealed from the decrees allowing the respondent's motion and dismissing the petition for adoption.

Questions for decision are whether, as matter of law, the judge could permit Marjorie to withdraw her consent, and

if so whether he was justified in granting such permission.
A decree for the adoption of an illegitimate child is only
authorized where the mother of the child has given her
written consent, and her signature has been dated and
attested before a notary public or a justice of the peace.
G. L. (Ter. Ed.) c. 210, § 2, as appearing in St. 1950, c. 737,
§ 1. In *Wyness* v. *Crowley*, 292 Mass. 461, 464, it was held
that where the written consent of the parent, given volun-
tarily and with a full understanding of every fact neces-
sary to such consent, is submitted to the court, the parent
cannot later retract it at his "will and pleasure." In its
opinion the court referred with approval to the English
practice under which an assent to a decree cannot arbi-
trarily be withdrawn "unless some error is shewn which
satisfies the Court that the consenting party ought not to
be bound." In a subsequent case, *Kalika* v. *Munro*, 323
Mass. 542, a mother had voluntarily consented in writing
to a petition for the adoption of her child, with "full recog-
nition of the legal effect of the adoption." On her appeal
from a decree granting the adoption we said, "It may be
conceded that the respondent could have been allowed by
the judge to withdraw or revoke her written consent. . . .
This accords with the principle that a court may vacate a
stipulation of the parties whenever it does not tend to
the doing of justice. . . . But a party may not disregard
a stipulation given by him, nor can he revoke or escape
from it at his will. His consent, once made a part of the
record, binds him until he is relieved from it by judicial
action" (pages 542–543). See *Capano* v. *Melchionno*,
297 Mass. 1, 15; *Mitchell* v. *Walton Lunch Co.* 305 Mass.
76, 80; *Malone* v. *Bianchi*, 318 Mass. 179, 182.

We think it plain that the judge had the power to allow
the respondent's motion. This is in accord with the weight
of authority elsewhere. It is also our opinion that the
findings are sufficient to justify its allowance as matter
of discretion. Since the enactment of St. 1950, c. 737, § 3
(now G. L. [Ter. Ed.] c. 210, § 5B), in passing upon a
petition for adoption, a court is "bound to give controlling

effect to identity of religious faith, 'when practicable.'"
*Gally, petitioner,* 329 Mass. 143, 149. The statute was held
to be constitutional in *Goldman, petitioner,* 331 Mass.
647. It is apparent from the findings that the judge allowed
the motion to withdraw consent principally because of the
difference between the religious faith of the mother and
that of the petitioners. In disposing of the motion he
must have realized that its allowance would require the
dismissal of the petition for adoption. In view of the im-
portant bearing of the religious factor on the merits of the
petition it cannot be held that the weight which was given
to that factor in passing upon the motion was error in law.

It is unfortunate that the mother's previous consent has
resulted in hardship to the petitioners but we think it is
not an instance where the doctrine of estoppel should be
invoked. See *Williams* v. *Capparelli,* 180 Ore. 41, 49.

The decree allowing the respondent's motion is affirmed.
It follows that the final decree dismissing the petition for
adoption must also be affirmed.

*So ordered.*