NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-102                                          Appeals Court

ADOPTION OF ZULA[1] (and a consolidated case[2]).


No. 25-P-102.

Suffolk.     April 15, 2026. – June 24, 2026.

Present:  Massing, Ditkoff, & Hand, JJ.


Adoption, Care and protection, Parent's consent.  Minor,
     Adoption, Care and protection.  Parent and Child, Adoption,
     Care and protection of minor.  Consent.  Jurisdiction,
     Juvenile Court.  Practice, Civil, Standing, Care and
     protection proceeding.  Statute, Construction.



     Petitions filed in the Suffolk County Division of the
Juvenile Court Department on May 17 and June 7, 2022.

     A motion to revoke consent to adoption was heard by Fabiola
P. White, J., and a motion to approve an open adoption agreement
was also heard by her.


     Jeanne M. Kaiser for the mother.
     Claire Gilchrist for Department of Children and Families.
     J. Sandra Ferrigno for the child.


---

[1] A pseudonym.

[2] The consolidated case involves the same parties.

MASSING, J. Shortly after giving birth to Zula, the mother agreed to the child's adoption, executing a written consent form as required by G. L. c. 210, § 2. When the planned adoption fell through and Zula became the subject of a care and protection petition in the Juvenile Court, the mother filed a motion in that matter to revoke her consent on the ground that she had not understood the paperwork she had signed. A Juvenile Court judge (motion judge) denied the motion on August 2, 2024. The motion judge determined that the Juvenile Court lacked jurisdiction because the mother consented to adoption before the care and protection proceeding had commenced. By order dated May 19, 2025, the motion judge likewise declined, on jurisdictional grounds, to entertain the mother's motion to approve an open adoption agreement. The mother appeals, contending that the Juvenile Court possessed jurisdiction to hear and decide both matters. The Department of Children and Families (DCF) and the child filed briefs in support of the mother's argument. We agree with the parties and vacate the orders dated August 2, 2024, and May 19, 2025. The case is remanded to the Juvenile Court for further proceedings.

Background. By the time Zula was born in 2022, the mother, working through a private adoption agency, had chosen a family to adopt her. In the days following Zula's birth, however, DCF took custody of Zula's two older siblings after supporting

reports of neglect and abuse of all three children.  See G. L. c. 119, §§ 51A, 51B.  Rather than see Zula taken into DCF custody with her siblings, the mother -- who herself had spent time in the foster care system -- placed the child in the care and custody of the adoption agency.  To facilitate the adoption, the mother signed several documents, including a consent form, described in detail below, and a form affidavit stating that she had "no information pertaining to either the name or address of the [b]irth [f]ather."  The same day, DCF filed a petition in the Juvenile Court under G. L. c. 119, § 24, alleging that the mother's two older children were in need of care and protection.  Zula was not named in the petition.

At the temporary custody hearing regarding the two older children, the father of one of them asserted that he might be Zula's genetic father as well.  When genetic marker testing confirmed his parentage, the adoption agency determined it could not provide long-term foster care for Zula during protracted custody litigation and transferred custody of Zula to DCF.  Zula was then added to the pending care and protection petition involving her two older siblings.  Given the mother's previous consent to Zula's adoption, the first judge to preside over the care and protection proceedings declined to add the mother as a party to Zula's case, on the ground that the mother lacked standing.

The mother subsequently filed a motion in the care and protection proceeding to revoke her consent to Zula's adoption or, alternatively, for the judge to reconsider the decision to deny the mother party standing. The judge made a preliminary determination that the Juvenile Court had authority to hear the mother's motion under its equity jurisdiction, see G. L. c. 218, § 59, and scheduled an evidentiary hearing on the motion.

Following several continuances, the evidentiary hearing was held by the motion judge. The mother testified that she had agreed to allow Zula to be adopted by a particular family with an open adoption agreement, that she felt rushed when she signed the paperwork, and that she did not understand she had consented to the child being adopted by any other family. The motion judge denied the mother's motion exclusively on the ground that the Juvenile Court lacked jurisdiction to determine the validity of her consent because she had given it before Zula was the subject of the care and protection case. As a result, the motion judge reasoned, only the Probate and Family Court had jurisdiction to decide whether the mother's consent could be revoked. The mother timely filed a notice of appeal.

The motion judge subsequently found the father of Zula unfit and adjudicated Zula in need of care and protection. Thereafter, the mother, DCF, and counsel for Zula reached an open adoption agreement with a new family, and the mother filed

a motion for approval of that agreement.  On May 19, 2025, the motion judge denied this motion too, reasoning that the mother lacked standing as to Zula and the Juvenile Court therefore had no authority to approve the agreement.  DCF and counsel for Zula then jointly filed a motion for approval of the agreement, or in the alternative, for an order of visitation between the mother and Zula.  The motion judge also denied this motion on jurisdictional grounds.  The mother moved to file a late notice of appeal from the order denying her motion to approve the agreement.  A single justice of this court allowed the late appeal and consolidated it with the mother's appeal from the August 2, 2024 order.

Discussion.  1.  Standard of review.  "The Juvenile Court is a court of limited jurisdiction, which 'has no . . . authority in the absence of a specific statutory authorization.'"  Commonwealth v. Mogelinski, 473 Mass. 164, 167 (2015), quoting Commonwealth v. A Juvenile, 406 Mass. 31, 34 (1989).  "We review dismissal for lack of subject matter jurisdiction de novo."  Matter of an Impounded Case (No. 3), 497 Mass. 530, 533 (2026), quoting Gammella v. P.F. Chang's China Bistro, Inc., 482 Mass. 1, 16 (2019).  "We likewise 'review questions of statutory interpretation de novo.'"  Care & Protection of Faraj, 496 Mass. 426, 429 (2025), quoting

Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).

2. Motion to revoke consent to adoption. When she first agreed to Zula's adoption, the mother executed a consent form in the broad language required by G. L. c. 210, § 2. The form stated that the mother "voluntarily and unconditionally surrender[ed]" the child to the care and custody of the adoption agency "for the purpose of adoption or such other disposition as may be made by a court of competent jurisdiction." Immediately above the mother's signature the form recited, in all capital letters as specified in the statute, "I UNDERSTAND THIS SURRENDER IS FINAL AND CANNOT BE REVOKED." See G. L. c. 210, § 2, third par.

Notwithstanding clear warnings in the statute and the form that the consent to adoption cannot be revoked, the Supreme Judicial Court has permitted biological parents to revoke their consent to adoption on the ground it was not knowing and voluntary. In Adoption of Thomas, 408 Mass. 446, 450 (1990), the court held that despite "the express terms of the statute [that] the parents' consents are final and irrevocable," a judge may consider evidence that consent was not voluntarily given. "For an expression of consent [to an adoption] to be effective, it must have been given voluntarily and on the basis of a full understanding of the facts necessary to the consent." Id.

"Reasonably construed, the provision in G. L. c. 210, § 2, with respect to the finality and irrevocability of a required consent means only that a knowing and uncoerced expression of consent in the statutory form and attended by the statutory procedures shall be final and irrevocable." Id. at 451. Consenting to a child's adoption "is in many, if not all, cases a cause of emotional and mental stress," however, and the grounds for invalidating consent must go beyond the "emotion, tensions, and pressures caused by the situation." Surrender of Minor Children, 344 Mass. 230, 236 (1962). See Adoption of Thomas, supra at 450-451, and cases cited ("consent given under c. 210 cannot be withdrawn when the consent was submitted voluntarily and with a full understanding").

In concluding that the Juvenile Court lacked jurisdiction to consider the validity of the mother's consent to Zula's adoption, the motion judge correctly noted that, to date, the published cases involving such motions have arisen in the Probate and Family Court. Indeed, in Adoption of Thomas, 408 Mass. at 450, the court cited Surrender of Minor Children, 344 Mass. at 234, for the proposition that the "only way to withdraw consent to an adoption . . . is to secure the permission of a probate judge."[3] See Adoption of Derrick, 415 Mass. 439, 446

---

[3] The full parenthetical following the court's citation to Surrender of Minor Children, 344 Mass. at 234, reads as follows:

(1993) (stating, in reference to 1990 versions of G. L. cc. 119, 210, "consent [to surrender] cannot be withdrawn without the permission of the probate judge").

These cases were handled exclusively by Probate and Family Court judges because they were decided at a time when the Juvenile Court did not have jurisdiction over proceedings for adoptions or to terminate parental rights. Through 1992, while care and protection proceedings under G. L. c. 119, § 24, were initiated in the Juvenile Court or the District Court,[4] DCF was required to bring a separate petition in the Probate and Family Court, under G. L. c. 210, § 3, to terminate parental rights and dispense with the need for consent to adoption. See Adoption of Simone, 427 Mass. 34, 41-42 (1998); Custody of a Minor (No. 1), 391 Mass. 572, 575-576 (1984); Adoption of Donald, 44 Mass. App.

---

"(only way to withdraw consent to an adoption that was given with full understanding of all necessary facts is to secure the permission of a probate judge)" (emphasis added). Adoption of Thomas, 408 Mass. at 450. Older cases recognized the discretion of a probate judge to void even a voluntary placement of a child for adoption. See, e.g., Ellis v. McCoy, 332 Mass. 254, 258-259 (1955); Erickson v. Raspperry, 320 Mass. 333, 335 (1946).

[4] Before the Statewide expansion of the Juvenile Court Department of the Trial Court, care and protection proceedings were also brought in the District Court Department. See Adoption of Simone, 427 Mass. 34, 41-42 (1998). The District Court's jurisdiction over care and protection cases was phased out in the 1990s. See St. 1992, c. 379, §§ 121, 203. Today, "[c]are and protection petitions must be initiated in the Juvenile Court." Matter of an Impounded Case (No. 3), 497 Mass. at 533.

Ct. 857, 859 (1998), S.C., 49 Mass. App. Ct. 908 (2000) and 52 Mass. App. Ct. 901 (2001).[5]

Relevant to the disposition of this appeal, critical amendments to cc. 119 and 210 of the General Laws went into effect in 1993.  Chapter 303 of the Acts and Resolves of 1992 inserted subparagraph (4) into G. L. c. 119, § 26 (b), and amended paragraph (b) of G. L. c. 210, § 3, to permit entry by Juvenile Court judges of decrees dispensing with the need for consent to adoption of children named in care and protection petitions.  See St. 1992, c. 303, §§ 2, 4.  Soon thereafter, the Legislature amended G. L. c. 210, § 1, by adding the following language, which remains in effect today:  "The district or juvenile court may, if it appears necessary or convenient, exercise the powers authorized by [c. 210], but only in respect to a pending proceeding before such district or juvenile court." See St. 1992, c. 379, § 59.[6]

---

[5] The chief administrative justice of the Trial Court had the authority to designate a Juvenile Court judge to preside over the two matters simultaneously.  See Adoption of Donald, 44 Mass. App. Ct. at 859.

[6] Chapter 303 of the Acts and Resolves of 1992 was approved by the Governor on December 30, 1992.  Chapter 379 was approved on January 13, 1993.  Because they affected the jurisdiction of the courts and lacked emergency preambles, these laws went into effect thirty days later, on January 29, 1993, and February 12, 1993, respectively.  See Vittands v. Sudduth, 41 Mass. App. Ct. 515, 518-519 (1996), S.C., 49 Mass. App. Ct. 401 (2000).

The sentence of G. L. c. 210, § 1, quoted above gave the Juvenile Court jurisdiction to inquire whether the mother's consent to Zula's adoption under G. L. c. 210, § 2, was valid. The power to inquire into the validity of a birth parent's consent to adoption is inherent in "the statutory scheme for adoption, which clearly" -- and particularly by G. L. c. 210, §§ 3 and 6 -- "contemplates a more active judicial role." Adoption of Thomas, 408 Mass. at 451. Where Zula was the subject of a pending care and protection petition in the Juvenile Court, G. L. c. 210, § 1, gave the Juvenile Court judge presiding over that petition the jurisdiction to exercise the same powers with respect to consent to adoption that a Probate and Family Court judge could exercise under c. 210.

Because the mother's request that the motion judge allow her to revoke her consent to adoption was made after Zula's name was added to the care and protection petition, the fact that the mother executed the consent form before that point was not an impediment to the Juvenile Court's assumption of jurisdiction. The language of G. L. c. 210, § 1, plainly grants the Juvenile Court jurisdiction over adoption matters "in respect to a pending proceeding," like the one to determine whether Zula and her siblings were in need of care and protection. Resolution of the mother's motion to revoke her consent to Zula's adoption was integrally related to the best interests of Zula at issue in

those proceedings.  "When statutory language is clear and unambiguous it must be construed as written."  LeClair v. Norwell, 430 Mass. 328, 335 (1999).  As written, the language of G. L. c. 210, § 1, requires only that a Juvenile Court case concerning the subject child be pending at the time the Juvenile Court judge seeks to exercise powers under G. L. c. 210.  Cf. Adoption of Simone, 427 Mass. at 41-43 (care and protection case "pending" within meaning of G. L. c. 210, § 1, even after judge adjudicated petition and terminated parents' rights).

The statutory scheme as a whole reinforces our conclusion. See Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 605 (2019) ("Even clear statutory language is not read in isolation").  To begin, the relevant section permits the Juvenile Court to exercise jurisdiction where "it appears necessary or convenient."  G. L. c. 210, § 1.  This flexible, broadly permissive language resists the application of a strict timeline to the statute.  See C.O. v. M.M., 442 Mass. 648, 651 (2004) (declining to "add to [statutory] language by interpretation" where "Legislature drafted the statute with purposeful flexibility").  Considering the broader statutory scheme, if the Legislature had intended for the Juvenile Court's jurisdiction to depend on the date the consent was executed, it would have said so.  See Dinkins v. Massachusetts Parole Bd., 486 Mass. 605, 613 (2021), quoting Sisson v. Lhowe, 460 Mass.

705, 720 (2011) (Spina, J., dissenting) ("The Legislature knows how to write exceptions . . ."). For example, G. L. c. 209C, § 3 (c), gives the Juvenile Court jurisdiction to adjudicate parentage in conjunction with a care and protection proceeding, but only if the care and protection proceeding was "initiated before the filing of a complaint [to establish parentage] under this [c. 209C]." General Laws c. 210, § 1, lacks such limiting language. All this leads us to conclude that the timing of a parent's execution of the consent form -- whether before or after the initiation of care and protection proceedings -- has no bearing on the Juvenile Court's jurisdiction to consider the validity of the consent, so long as the issue is raised during and relevant to an active proceeding.

Because the motion judge concluded that the court lacked subject matter jurisdiction, she did not reach the merits of the mother's motion to revoke her consent. We recognize that a Juvenile Court judge enjoys a modicum of discretion in determining whether to exercise powers under c. 210 in connection with a pending care and protection matter:  the Juvenile Court "may, if it appears necessary or convenient, exercise the powers authorized by" c. 210 (emphasis added). G. L. c. 210, § 1. Here, however, if the motion judge had understood that subject matter jurisdiction existed, the only reasonable course of action would have been to exercise it and

adjudicate the mother's motion. At the time the motion judge declined to reach the merits of the mother's motion to revoke her consent, the judge had already conducted an evidentiary hearing during which the mother testified and was subject to cross-examination, and all parties were permitted to present their arguments as to the validity of the consent.[7] Failure to exercise jurisdiction at this juncture "introduce[d] undesirable and unnecessary delays," Adoption of Simone, 427 Mass. at 43, while deferring the resolution of this case and the finalization of Zula's adoption. Moreover, if the mother had commenced an action in the Probate and Family Court to withdraw her consent to Zula's adoption, and a judge of that court had determined that the mother's consent was invalid, that decision would have had disruptive repercussions on the ongoing care and protection matter in the Juvenile Court.

Accordingly, the motion judge erred in denying the mother's motion to revoke her consent to Zula's adoption solely on the ground that the Juvenile Court lacked jurisdiction.

---

[7] The hearing satisfied the mother's due process rights. A judge need not apply "the full panoply of constitutional rights afforded criminal defendants" in determining the validity of a parent's consent to adoption; she is required only to "make an appropriate inquiry to establish that the parent's consent was knowing and voluntary." Adoption of John, 53 Mass. App. Ct. 431, 435 (2001).

3.  Motion to approve open adoption agreement.  The motion judge also erred in concluding that the mother's lack of standing with respect to Zula's adoption meant the Juvenile Court had no jurisdiction to act on the mother's motion to approve the open adoption agreement she had reached with the new preadoptive parents.  Open adoption agreements are governed by G. L. c. 210, § 6C, which provides, "Prior to the entry of an adoption decree, prospective adoptive parents and a birth parent may enter into an agreement for post-adoption contact or communication between or among a minor to be adopted, the prospective adoptive parents and the birth parents."  G. L. c. 210, § 6C (a).  The statute refers to "birth parents," regardless of their legal status with respect to the child.  Id.[8]

Where the preadoptive parents have reached an open adoption agreement with a birth parent, it is incumbent on the judge entering the adoption decree to consider whether such an agreement "(i) is in the best interests of the child; (ii) contains terms that are fair and reasonable; and (iii) has been entered knowingly and voluntarily by all parties to the agreement."  G. L. c. 210, § 6C (b).  "Even where biological and

_____

[8] Indeed, even if a birth parent does not voluntarily consent to adoption and the parent's rights are terminated under G. L. c. 210, § 3, that statute specifically allows the birth parent to enter into an agreement for posttermination contact with the child and, subsequently, an open adoption agreement. See G. L. c. 210, § 3 (d).

prospective adoptive parents do agree on postadoption contact, the Legislature provided for judicial involvement to approve the agreement."  Adoption of Vito, 431 Mass. 550, 559 (2000).  And where, as here, any adoption decree would be entered by the Juvenile Court judge presiding over the care and protection case, that same judge would have the authority to approve the proposed open adoption agreement.  See Adoption of Ilona, 459 Mass. 53, 65 n.15 (2011) ("a judge may encourage the prospective adoptive parents and biological parents to enter into an agreement for postadoption visitation or communication, which must be approved by the judge issuing the adoption decree"); G. L. c. 210, § 6C (a) (open adoption agreement "may be approved by the court issuing the termination decree under [G. L. c. 210, § 3]; provided, however, that an agreement under this section shall be finally approved by the court issuing the adoption decree").[9]

Conclusion.  The order dated August 2, 2024, is vacated. In connection with DCF's petition to adjudicate Zula in need of care and protection, the Juvenile Court has jurisdiction to hear

---

[9] Because we hold that the General Laws explicitly give the Juvenile Court jurisdiction over the matters raised in this appeal, we need not address whether, alternatively, the Juvenile Court had jurisdiction in equity.  See G. L. c. 218, § 59 ("The divisions of the juvenile court department shall also have jurisdiction in equity concurrent with the supreme judicial court and with the superior court department in all cases and matters arising under the provisions of chapters 119 and 210").

and decide the mother's motion to revoke her consent to Zula's adoption.  The case is remanded for adjudication of that motion, if the mother chooses to pursue it.

The order dated May 19, 2025, is vacated.  The Juvenile Court also has jurisdiction, in connection with the care and protection petition, to hear and decide the mother's motion for approval of the open adoption agreement.  The case is remanded for adjudication of that motion as well, if it is renewed.

<u>So ordered</u>.